# Richmond.

WILLIAMSON AND OTHERS v. READ AND OTHERS.

January 17, 1907.

|106 | 453|
|106 | 824|

|103 | 453|
|108 | 287|

1. EMINENT DOMAIN—*Report of Viewers—Weight Given—Exception to General Rule.*—Great weight is given to the report of the viewers as to the propriety or impropriety of opening and establishing a public highway, and as to the amount of damage to be allowed to proprietors whose lands are taken, and, unless the record shows clearly that the damage is greater than that recommended by the viewers, the court, as a rule, does not interfere with the report. But the application of the rule as to damages is dependent upon whether or not the viewers have been governed by right principles in assessing the damages.

2. EMINENT DOMAIN—*Public Road—Peculiar Benefits—What Constitutes.*—In estimating the "peculiar benefits" to land through which a public highway is established the viewers can only consider such benefits as are peculiar and special to the landowner and his land, and not such as are received in common with the whole community. The actual and usable value of the land must be increased as well as its market or salable value, and not merely the latter. The mere fact that the establishment of the highway will enable the owner of the residue of a farm to cut it up into lots and sell them at an increased price does not establish "peculiar benefits" when the farm as such is seriously damaged, and the owner has no need for the proposed highway.

Error to a judgment of the Circuit Court of Roanoke county in a condemnation proceeding. Judgment for petitioners. Defendant assigns error.

*Reversed.*

The opinion states the case.

*C. B. Moomaw* and *William Gordon Robertson,* for the plaintiff in error.

*Robertson, Hall & Woods,* for the defendants in error.

CARDWELL, J., delivered the opinion of the Court.

This writ of error and supersedeas brings under review an order of the Circuit Court of Roanoke county affirming an order of the board of supervisors of that county establishing a public road through the lands of plaintiffs in error, Mrs. Nannie C. Williamson and others.

It appears that plaintiffs in error are the owners of a tract of land occupied and used by them as a farm, containing 360 acres, adjoining the corporate limits of the city of Roanoke; that by reason of its proximity to that city its value is largely enhanced, and it is worth a great deal more in the market than it would be worth if it were considered solely as farm land; and that several of the streets of the city are open and in use up to this tract of land, and one street had been extended into or through it during the "boom" period, but was never put into condition for use as a street.

The report adopted by the board of supervisors and affirmed by the Circuit Court, shows that three and four-tenths acres of plaintiffs in error's land is actually necessary for the proposed road, for which damages were assessed at $600, but nothing was allowed as damages to the residue of the tract for the reason, as the viewers' report states, that the peculiar benefits to be derived by plaintiffs in error from the opening of the proposed road will greatly exceed any damages to the residue of their property. Exceptions were duly taken to this report by plaintiffs in error, all of which were overruled, and upon an appeal to the Circuit Court the order of the board of supervisors, adopting the report of the viewers, was confirmed.

A number of errors are alleged in the proceedings which we do not deem it necessary to consider in detail.

It is well recognized that in Virginia great weight is given to the report of the viewers as to the propriety or impropriety

of opening and establishing a public highway, and as to the amount of damages which should be allowed to persons whose lands are taken for such purposes under the right of eminent domain, and unless the record shows clearly that the damage is greater than that recommended by the viewers, the court, as a rule, does not interfere with the report; but that rule in its application always depends upon whether or not the viewers have been governed by right principles in assessing damages to the landowners whose lands are taken.

The viewers in these proceedings were called upon to report as to the propriety or impropriety of opening one or more roads leading from the city of Roanoke north, the purpose of which was to give a proper roadway leading from the community on the macadamized road in the neighborhood of Hollins into the city; and the report of the viewers here complained of was finally adopted, and with it only we are concerned.

It may be conceded, upon the evidence in the record, that the court did not err in holding that the road, as established by the board of supervisors, would be of great public convenience and ought to be opened; but the evidence clearly shows that the viewers acted upon erroneous principles in assessing the damages to plaintiffs in error to result from opening and establishing the proposed road.

It appears that the amount of damages allowed—$600—is little or no more than the actual market value of the land necessary for the road, including damages for fences that will be made necessary to be built by plaintiffs in error for the protection of their property, and conceding this to be a fair and just allowance for the land actually to be taken and fences that will have to be built, nothing whatever is allowed for damages to the residue of the property, upon the idea that the peculiar benefits to be derived from the establishment of the road will exceed any damages to the residue of the property. We are unable to find sufficient proof in the record that plaintiffs in error will be benefited at all by the establishment of the pro-

posed road, and that they will be damaged (that is, the residue of their property) is conceded. The road is in no way needed for the development of the property of plaintiffs in error, or to bring it on the market for either farm purposes or for building purposes. As stated, it adjoins the corporate limits of the city of Roanoke, and to it streets are already open, graded and in use, so that plaintiffs in error might, if they so desired, extend those streets or lay out other streets for the purpose of sub-dividing their property into small parcels or into building lots, with the view of putting the same on the market for sale.

"Two elements enter into the question of remuneration to a party whose private property is condemned for a public road, namely: just compensation for the land actually taken, and also a fair recompense for damage to the residue of the tract, beyond the peculiar benefits to be derived in respect to the residue of the land from the road to be established." Virginia Code, section 1078.

"But the benefits contemplated by the statute to be considered in reduction of damages in condemnation proceedings are confined to such as are *direct* and *peculiar* to the owner of the land, as distinguished from those which are shared by him in common with other citizens." *Heninger* v. *Peery,* 102 Va. 896, 47 S. E. 1013.

In Lewis on Eminent Domain, section 476, it is said: "Special benefits are such as affect the actual use and enjoyment of property and thereby render it more valuable in the market. The matter is very well put by the Supreme Court of Kansas in an opinion from which we quote as follows:

" 'We think the court below erred in several particulars; but all the errors probably arose from the erroneous opinion seemingly entertained by the court "that all conveniences and benefits are proper subjects for the jury to take into consideration in arriving at a proper conclusion as to what damages should be allowed to the plaintiff."

" 'Now "all conveniences and benefits" are not proper subjects

for the jury to consider in awarding damages to a landowner who is seeking damages for supposed injuries to his land, claimed to have been caused by the location of a road over his premises. It has already been decided by this court that "in the appropriation of the right of way for a public road the public has a right, in the absence of any special statutory or constitutional restriction, to reduce the damages to be awarded to the landowner by the amount of benefits which enure to him as the *direct* and *special* result of the proposed road, *but not by any which he received in common with the rest of the public.*" That is, the benefits which may be taken into consideration for the purpose of reducing the damages to be awarded to the landowner are such as are direct and special as to him and his land, and not such as are received in common by the whole community; and, with reference to cause and effect, they are such as are direct, certain and proximate, and not such as are indirect, contingent or remote. It is true that increased value of the land is often taken into consideration in fixing the amount of the damages; but this is done only where such increased value arises from such direct, special and proximate cause, such as the draining of the land, or building bridges across streams running through the land, or making some other valuable improvement on or near the land by means of which the owner will be enabled to enjoy his land with greater advantage. That is, the increased value must be founded upon something which affects the land itself directly and proximately. It must be founded upon something which increases the actual or usable value of the land, as well as the market or salable value thereof, and not such as increases merely the market or salable value alone. Increased value founded upon merely increased facilities for travel and transportation by the public in general is not the kind of increased value which may be taken into consideration in reducing the damages to be awarded to the landowner. That kind of increased value is too indirect and too remote from the original cause, which cause is the laying out of the

road. Besides, it is a kind of increased value which is common to the whole community in general, and to each individual thereof to a greater or less extent; and it has no relation to the use of the land as land, but it is merely an increased market value founded upon the extraneous circumstances of increased facilities for public travel and transportation.'

"Some cases maintain that any increase in value caused by the work or improvement is a special benefit. 'Special benefits are such benefits flowing from the proposed public work as appreciably enhance the value of the particular tract of land alleged to be benefited.' "

The same view of the law is taken by this court in a number of cases, beginning with *James River and Kanawha Canal Co.* v. *Turner,* 9 Leigh 313, and coming down to *Heninger* v. *Peery,* *supra.*

It cannot be maintained from the evidence given in this case, either by witnesses introduced in support of the finding of the viewers or on behalf of plaintiffs in error, that there are benefits to flow to the residue of the lands of plaintiffs in error by the establishment of the proposed road peculiar and local to these lands. As already stated, the farm is so situated that it has all the outlets to the city of Roanoke and to public roads that any of its uses might require. The road, if opened, gives to it no new outlet, it brings to it no road that is now not reached, and the only supposed advantage which this road is to plaintiffs in error's land is that it will enable them to cut up the farm into small lots and sell it off at an increased value, while the disadvantages to it as a farm are conceded. It cuts the farm in two, leaving about two-thirds of the land on the west side of the road and one-third on the east side; it causes an additional amount of fencing, in excess of one mile, which will cost for its first construction from $240 to $250; it necessitates the maintenance of at least four gates, which on account of trespassers must be kept continually locked; it causes inconvenience in passing from one place to another by having to go through

those gates; it cuts into bad shape a strip of land at each side of the farm of from five to six acres; and many other disadvantages and inconveniences involving expense to the owners of land appear from the evidence.

In the face of all these inconveniences and disadvantages, a sum is only allowed in the way of damages to plaintiffs in error of about the value of the land actually to be taken. Leaving out of view the claims of the parties themselves and the statement of Mrs. Williamson as to the damages they will sustain by the opening of the proposed road through their farm, the evidence is conclusive that the damages allowed are inadequate, attributable doubtless to a failure to fairly consider and give due weight to the proof that there are no special benefits to be derived peculiar and local to the residue of the farm. The evidence of all the viewers who testified in the case, as well as that of other witnesses, some of them totally disinterested, is to the effect that the advantages to this farm, as considered by the viewers, are not such advantages as are to be considered in estimating the damage done to a farm by the opening of a road through it, but are those general advantages which the opening of a public road bestows upon a community.

We are of opinion, therefore, that the judgment here complained of is amenable to the objection indicated, and on that ground the order confirming the action of the board of supervisors in directing the proposed road to be established and ascertaining the damages to the lands of plaintiffs in error is erroneous, and should be reversed and annulled.

It appears that Mrs. Williamson owns only a life estate in the farm through which the proposed road is located, and that her children own the remainder; and the failure of the lower court to apportion the damages allowed by the viewers between these parties, taking into consideration the rights of a tenant of the farm who is farming it, is assigned as error. We do not deem it necessary to consider this assignment of error, for the reason that before the road could have been established the

court below would have had, under the law, to refer the matter back to the board of supervisors, the board being required to determine by a recorded vote whether the necessary expenditure for opening the road should be made or not; and presumably should the road be ultimately established, the board of supervisors would see to the proper apportionment of the damages allowed to the parties entitled thereto or any interest therein. Virginia Code, 1904, section 944a.

The judgment complained of will be reversed and annulled, and the case remanded to the Circuit Court of Roanoke county for further proceedings to be had therein not in conflict with this opinion.

*Reversed.*