# Richmond.

## H. G. SHIRLEY, CHAIRMAN OF THE HIGHWAY COMMISSION OF VIRGINIA, v. J. W. RUSSELL.

### December 22, 1927.

1. EMINENT DOMAIN—*Exceptions to Report of Commissioners and Instructions—Whether Part of Record on Appeal where not Contained in Separate Bills of Exception—Exceptions Part of Pleadings.*—The instant case was an appeal by the Chairman of the Highway Commission from a judgment overruling the exceptions of the Highway Commission to the report of the commissioners in eminent domain proceedings and confirming the report. Defendant in error contended that the exceptions of the Highway Commission to the report of the commissioners and the instructions of the trial court were not properly a part of the record, because not contained in separate bills of exception. There was no merit in this contention. The exceptions were part of the pleadings upon which the case was tried, and made the issue which the court tried as the record shows, while the instructions were but an elaboration and explanation of the duties of the commissioners contained in the statute and order appointing them, and which was served upon each commissioner.

2. EMINENT DOMAIN—*Report of Commissioners—Weight Attached to Report—View of the Land.*—The State has delegated the assessment of damages in eminent domain proceedings to an impartial commission, composed of five disinterested freeholders appointed by the court. They are required to go upon the land, examine it, hear testimony, if any is offered, and consider all the facts and circumstances. The law lays great stress upon the view. The commissioners are greatly aided by the evidence of their own senses, and the law attaches great weight to their report. Unless "good cause be shown against it," the report of the commissioners must stand.

3. EMINENT DOMAIN—*Report of Commissioners—Carefully Scrutinized—Damages Plainly Excessive.*—The courts should scrutinize carefully the reports of commissioners in eminent domain proceedings and if the damages are plainly excessive reform the same.

4. EMINENT DOMAIN—*Peculiar or Special Benefit—Enhancement in Market Value of Farm Abutting upon a Hard Surfaced Road.*—In eminent domain proceedings to condemn land for a hard surfaced road, the

enhancement in market or sale value of a farm abutting upon the hard surfaced road is not a peculiar or special benefit.

5.  EMINENT DOMAIN—*Peculiar or Special Benefit—Enhancement in Market Value of Farm Abutting upon a Hard Surfaced Road.*—The public roads, whether dirt or hard surfaced, are the property of the State, constructed and maintained by its agencies to furnish means of travel and transportation to all the citizens of the State. The people, who furnish the funds for this work, believe that such facilities enhance the market or sale value of the land, especially that of the neighborhood or county that the road traverses. It is not, however, a direct or proximate benefit, but incidental and indirect. This is designated in law as community or general benefits. The mere proximity of the abutter to the road does not make its facilities any more valuable to him than others not so situated except in degree.

6.  EMINENT DOMAIN—*Damages—Constitution of 1902, Section 58, Article 4—Power of Legislature.*—The Constitution of 1902, section 58, article 4, provides that the legislature shall not enact any law whereby private property shall be taken or damaged for public uses without just compensation. Should the General Assembly exclude from a statute authorizing the exercise of the power of eminent domain any element of damage that directly flows from the taking, or allow benefits or advantages that do not particularly and exclusively affect the particular tract or parcel of land whereof a portion is condemned, such a provision would be unconstitutional.

7.  EMINENT DOMAIN—*Damages—Benefits—Enhanced Value of Land by Improvement.*—The enhanced value of land not taken in eminent domain proceedings by reason of the improvement cannot be considered as an element of just compensation as provided in the Constitution of 1902, section 58, article 4. It is a community benefit and not a special or peculiar benefit to the land that may be offset against damages in condemnation proceedings.

8.  EMINENT DOMAIN—*Damages—Benefits—Enhanced Value of Land by Improvement—Case at Bar.*—In the instant case, a proceeding to condemn land for a hard surfaced road, the commissioners were right in not considering the enhanced value of defendant's land by reason of the hard surfaced road passing through his farm, and in assessing damages for the inconvenience or damage caused by cutting his farm into two separate tracts.

9.  EMINENT DOMAIN—*Damages—Benefits Derived from the Improvement—Special or Peculiar Benefits—Increase in Actual and Usable Value—Increase in Market Value.*—In estimating the "peculiar (or special) benefits" to land through which a public highway is established, the viewers can only consider such benefits as are peculiar and special to the landowner and his land, and not such as are received

in common with the whole community. The actual and usable value of the land must be increased as well as its market or salable value, and not merely the latter.

10. EMINENT DOMAIN—*Damages—Benefits—Enhanced Value of Land by Improvement.*—In eminent domain proceedings the increased value of the land not taken by the improvement is often taken into consideration in fixing the amount of the damages; but this is done only where such increased value arises from such direct, special and proximate cause, such as the draining of the land, or building bridges across streams running through the land, or making some other valuable improvement on or near the land by means of which the owner will be enabled to enjoy his land with greater advantage.

11. EMINENT DOMAIN—*Damages—Peculiar Benefits—Hard Surfaced Road Through Farm—Case at Bar.*—In the instant case defendant's farm, previous to the eminent domain proceedings, abutted upon an old dirt road. The new road out of the construction of which the eminent domain proceedings arose was a hard surfaced road.

*Held:* That the fact that defendant's farm abutted upon the new road, when it previously abutted upon the old one, did not constitute a peculiar benefit, nor did the fact that the new road was hard surfaced, while the old road was a dirt one.

12. STARE DECISIS—*Opinion of Court—Construction of Opinion.*—It is a rule of construction that the opinion of an appellate court must be construed in the light of the facts in the particular case.

13. STATUTES—*Constitutionality.*—A law which contravenes a provision of the Constitution of a State cannot be enforced in the State no matter when passed.

14. EMINENT DOMAIN—*Constitutional Provision for Just Compensation—Constitutional Provision Self-Executing.*—The provisions of the Constitution of 1902 against the taking or damaging of private property for public use, without just compensation, were self-executing and repealed and displaced all existing law inconsistent therewith.

15. STREETS AND HIGHWAYS—*Eminent Domain—Public Use.*—When land is condemned for a street or road the right of every citizen to use same, without discrimination, for travel and transportation, constitutes the public use, which alone justifies the exercise of the power of eminent domain.

16. EMINENT DOMAIN—*Damages—Enhanced Value of Land not Taken—Reason for the Rule.*—Different courts have assigned different reasons why the enhanced value to the abutter's land cannot be considered in estimating the damages to the residue. Whatever may be the true reason for the rule of law, it is too firmly established as a rule of constitutional law to be changed by the courts. Nor was it the intention of section 58, article 4, of the Constitution of 1902, to change the rule by the insertion of the words "or damaged."

17. EMINENT DOMAIN—*Damages—Benefits—Increase in Market Value of the Land.*—In the instant case the Special Court of Appeals does not wish to be understood as holding that the increase in the market value of land, brought about by the construction of a public highway, should not be taken into consideration under any circumstances in assessing the damages to the adjacent property in condemnation proceedings, but is of the opinion that the question of whether such increase in market value does or does not constitute a peculiar benefit, must necessarily depend upon the facts and circumstances of each particular case; although the general rule must be taken as established in this opinion.

Error to a judgment of the Circuit Court of Fauquier county, in eminent domain proceedings. Judgment for defendant. Petitioner assigns error.

*Affirmed.*

The opinion states the case.

*J. F. Hall, J. Donald Richards* and *Paul C. Richards, Jr.,* for the plaintiff in error.

*Burnett Miller* and *C. W. Carter,* for the defendant in error.

CHRISTIAN, J., delivered the opinion of the court.

This is a writ of error to the judgment of the Circuit Court of Fauquier county, confirming the commissioners' report in the condemnation proceeding instituted by H. G. Shirley, Chairman of the State Highway Commission of Virginia, to condemn for road purposes a strip of land fifty feet wide through the farm of J. W. Russell, located in Fauquier county.

The procedure was regularly instituted and conducted in accordance with the provisions of the statutes governing such cases.

The five freeholders appointed by the court as com-

missioners, duly qualified; went upon the land; viewed the same; heard such evidence as was offered and after argument of counsel for the petitioner and landowner, went into executive session, and agreed unanimously upon their report and award. Their report which described by metes and bounds the six and seventy-seven one hundredths acres of land to be taken, concluded as follows:

"And upon a view of the land aforesaid and of the adjacent and other property of the owner, and of the property of other persons who will be damaged in their property by the construction, operation and maintenance of said road, and upon such evidence as was before us, we ascertained that for the part of said land (or for the interest or estate in the land), and other property proposed to be taken, $700.00 will be a just compensation, and the damages to the adjacent and other property of said owner, beyond the peculiar benefits that will accrue to said properties, respectively, from the construction, operation and maintenance of the said road are $2,100.00."

The report of the commissioners was filed in the clerk's office on the 8th day of December, 1925, and on the 1st day of January, 1926, Shirley filed six exceptions to said report. The substance of said exceptions is that the consequential damages are excessive; not sustained by the evidence, and based upon a misconception of the law, and instructions of the court.

On the 6th day of February, 1926, the cause came on to be heard on the report of the commissioners, the exceptions to said report, and both parties, having introduced evidence, the examination of each of the commissioners and argument of counsel, and the court being of opinion that no good cause has been shown against said report, overruled the exceptions of H. G.

Shirley and confirmed said report. This judgment Shirley contends is erroneous.

[1] The defendant, Russell, contends that Shirley's exceptions to the report of the commissioners and the instructions of the learned judge of the trial court are not properly a part of the record, because not contained in separate bills of exception. This contention is without merit. The exceptions were part of the pleadings upon which the case was tried, and made the issue which the court tried as the record shows.

While the instructions were but an elaboration and explanation of the duties of the commissioners contained in the statute and order appointing them, and which was served upon each commissioner.

Upon the trial of this case the evidence proved that Russell's farm abutted upon the old road, and that the new route changed the road so that it divided his farm into two parts. Thus each portion of his farm abutted upon the reconstructed hard surfaced road the entire distance through the farm.

Shirley introduced three witnesses, freeholders. The land of two of them abutted upon the road and the third is near it. Each testified that they were of opinion that land abutting upon the road received greater benefits than other nearby land, and that the market or sale value of the Russell land was enhanced from ten to twenty-five dollars per acre by reason of the fact that it abutted on the road. His counsel examined each of the commissioners and from their evidence it appears that they did not set down in dollars and cents any peculiar benefits to Russell from the road but considered the same. The consequential damages allowed were composed of $1,400.00 for a fence on each side of the road—this was the actual cost of an American wire fence—and $700.00 for incon-

venience and damages to the farm by the road cutting it into two parcels. There was no exception to the amount allowed for the land taken.

There is no evidence of any peculiar or special benefits to the Russell dairy farm by reason of the construction of the road. The commissioners who viewed the land discovered none, nor were any pointed out by the representatives of Shirley. The only evidence of any peculiar benefits was the opinion of the three witnesses introduced by Shirley, that the fact that Russell's farm as divided by the road abutted on each side of the hard surfaced road through the farm, enhanced the market or sale value of the residue of the land. This market or sale value of the land was not considered as a peculiar benefit by the commissioners. Confronted with this conflict of opinion, which, should the court have adjudged, conformed to the statute in Virginia?

[2] The State has delegated the assessment of damages in condemnation proceedings to an impartial commission, composed of five disinterested freeholders appointed by the court. They are required to go upon the land; examine it; hear testimony, if any is offered, and consider all the facts and circumstances. The law lays great stress upon the view. The commissioners are greatly aided, as they were in this case, by the evidence of their own senses, and the law justly attaches great weight to their report. Unless "good cause be shown against it," the report of the commissioners must stand. *Cranford Paving Co.* v. *Baum*, 97 Va. 501, 24 S. E. 906; *Duncan* v. *State Highway Commission*, 142 Va. 135, 128 S. E. 546.

The learned judge of the trial court might safely have based his judgment upon the presumption of law in favor of the report of the commissioners, but this he manifestly did not do. For counsel for Shirley must

have insisted before him, as was done before us, that
there is a tendency at present, if not a practice, for
commissioners, to award excessive damages in con-
demnation proceedings, and that any increase in the
market value by a road should, since the establishment
of the State Highway Commission, and the adoption
by the State of the general plan of improved highways,
be construed to be peculiar or special benefits.

This writ of error makes it our duty to consider both
of these contentions, and it will be necessary to review
the authorities to ascertain the meaning of the words
"peculiar" or "special" benefits.    Five disinterested
freeholders appointed by the court to act as commis-
sioners or viewers has been the tribunal provided by
statute (Code 1919, sec. 1980) in condemnation pro-
ceedings in this State for more than a century.    Their
findings are subject to review by the courts.    Therefore,
it may be safely asserted that experience has proven
that it is the best method of doing justice between the
parties.    It is analogous to the trial by jury so prized
by the people.

[3] It is less liable to mistakes, abuses and errors
than a permanent commission or bureau.    No human
tribunal can do exact justice between parties, and that
is best that is least likely to error and mistakes.    But
the courts should scrutinize carefully the reports of
commissioners and if the damages are plainly excessive
reform the same.    This was no doubt done in the case
under review, and the finding approved by the trial
court.    No excessive damage being shown this judg-
ment cannot be annulled on that account.

[4, 5] We come now to the proposition, whether
enhancement in market or sale value of a farm abutting
upon a hard surfaced road is a peculiar or special benefit.
The public roads, whether dirt or hard surfaced, are the

property of the State, constructed and maintained by its agencies to furnish means of travel and transportation to all the citizens of the State. The people, who furnish the funds for this work, believe that such facilities enhance the market or sale value of the land, especially that of the neighborhood or county that the road traverses. It is not, however, a direct or proximate benefit, but incidental and indirect. This is designated in law as community or general benefits. What benefit does the abutter derive over and above his neighbors? All have equal rights to the use of the road, which includes the right of ingress and egress. But each must furnish at his own expense the means of enjoyment of this right into the main road or its feeders. The mere proximity of the abutter to the road does not make its facilities any more valuable to him than others not so situated except in degree.

What elements shall constitute damages to the land, and peculiar benefits that may be offset against the same, grow out of the constitutional provision: "It (the legislature) shall not enact any law whereby private property shall be taken or damaged for public uses without just compensation." Virginia Constitution, section 58, article 4.

[6] The right of the landowner to *just compensation* arises from natural law, which the Constitution protects, and the provisions or terms, contained in the charters of public service corporations or general statutes for them or State agencies, upon which they may exercise the powers of eminent domain, is the construction that the General Assembly puts upon that constitutional right. Should the General Assembly exclude from the statute any element of damage that directly flows from the taking, or allow benefits or advantages that do not particularly and exclusively

affect the particular tract or parcel of land whereof a portion is condemned, such a provision would be unconstitutional. *The James River and Kanawha Company* v. *Turner*, 9 Leigh (36 Va.) 313; *Richmond* v. *Goodwyn*, 132 Va. 442, 112 S. E. 787.

In the case of *The James River and Kanawha Company* v. *Turner, supra*, decided in 1831, this identical question was determined that is raised in the instant case, viz: That the riparian owner whose land is condemned shall not be charged as a special advantage the enhanced value of his land by reason of the use or proximity of the canal or road. It is true that only three judges sat in the case and each delivered an opinion. They agreed that the cost of fencing and inconvenience from cutting the farm into two parcels was a direct damage from the *taking*, and that if any part of the tract of land was marshy and the canal drained it, so that portion could be cultivated or the walls of the canal served as a fence, these or similar direct benefits were special advantages that the assessors should consider as an offset to the direct damage to the residue of the tract. That, as to the land actually taken, there should be no deduction for the benefits of any kind, but its cash value should be paid in full, and that in estimating the special advantages to the owner of the land not taken, the advantages to be considered were *such as particularly and exclusively* affect the particular tract or parcel of land whereof a portion is condemned.

[7] The only difference among the judges in this case was whether the enhanced value to the abutting land was a community benefit that could not be considered as an element of just compensation, or a special advantage that might be offset against the damages to the residue of the tract not taken. Judge Parker was

of opinion that the enhanced value to the balance of
the land by reason of its abutting the canal was a
special or peculiar benefit, and that the trial court
erred in instructing the assessors that if the legislature
intended them to consider the enhanced value of said
land by reason of its proximity to the canal in fixing
just compensation, then such provisions would be
unconstitutional, and that the judgment of the trial
court should be reversed.

Judges Tucker and Brockenbrough held that the
enhanced value to the part of the tract not taken by
reason of its proximity to the canal could not be con-
sidered as an element of just compensation as provided
in the Constitution. The right of way is part of the
cost of the public improvement which is agreed to be
constructed and maintained, for the public use—the
use of all the citizens upon the same terms and con-
ditions—and is the consideration for the right con-
ferred by legislature to exercise the power of eminent
domain. That if the abutters upon the canal or other
improvement, where land is taken without their con-
sent, are required to account for the enhanced value
to balance of the tract not taken, in fixing just com-
pensation, they would be contributing *pro tante* to the
construction or cost of the improvement and would not
as part of the public receive the benefit of the use of
the improvement for travel and transportation upon
the same terms and conditions as their neighbors or
the public. The incident or accident that the canal or
road is projected through the abutter's land would give
him a monopoly that would enable him to demand what
he pleased, but the Constitution takes this right from
him for the benefit of the public, but upon condition of
natural justice that he receive just compensation for
the land taken, and physical damages to the residue,

less .exclusive, local, special or peculiar benefits that grow out of the taking and maintenance of the improvement, and not general or community benefits. If such be not the meaning of this clause of the Constitution, "it keeps the word of promise to the ear, but breaks it to the hope." For the reasons set forth in their opinions the majority of the court affirmed the judgment of the trial court.

The decision in this case established what are community or general benefits to be excluded from consideration in fixing just compensation where land is condemned for public uses, and what damages may be considered to the residue of the tract and the special or peculiar benefits that may be offset against such damages in condemnation proceedings.

While this decision was by a majority of a court of three members, their conclusions were so sound and just that every decision in this State since then has approved the same, and the legislature has adopted the principles therein enunciated by statute as the fixed rule of law to determine just compensation in all condemnation proceedings. It can make no difference in principle whether the condemnor is a public service corporation or a State agency, nor whether the power of condemnation is granted by special statute in form of a charter or by general statute. The private rights of the citizen in such cases are guaranteed by the Constitution, and the legislature cannot infringe upon the same. Not only do we find the law as laid down in this case part of the law of eminent domain in this State, but all of the other States, with the exception of seven or eight, have enunciated similar rules of construction of their respective Constitutions.

[8] In view of the law, the commissioners were right in not considering the enhanced value to the residue of

Russell's land by reason of the hard surfaced road pass-ing through his farm, and assessing damages for the in-convenience or damage caused by cutting his farm into two separate tracts.

[9] In the case of *Williamson* v. *Read*, 106 Va. 453, 56 S. E. 174, the facts were identical with those in the instant case, except the road in that case was a dirt road, and in this a hard surfaced road. Furthermore the commissioners did not allow any damages to the residue of the farm, because of its proximity to the city of Roanoke, and the road would enable the owner of the residue to cut it up into lots and sell them at an increased price. That this was a "peculiar or special benefit," Judge Cardwell, after examination of the cases in Virginia, beginning with *James River and Kanawha Canal Co.* v. *Turner*, 9 Leigh (36 Va.) 313, decided in 1831, held the settled law to be (syllabus): "In esti-mating the 'peculiar (or special) benefits' to land through which the public highway is established, the viewers can only consider such benefits as are peculiar and special to the landowner and his land, and not such as are received in common with the whole com-munity. The actual and usable value of the land must be increased as well as its market or salable value, and not merely the latter. The mere fact that the establishment of the highway will enable the owner of the residue of a farm to cut it up into lots and sell them at an increased price does not establish 'peculiar bene-fits' when the farm as such is seriously damaged, and the owner has no need for the proposed highway."

And on page 457 (56 S. E. 175) it is said:

[10] "It is true that increased value of the land is often taken into consideration in fixing the amount of the damages; but this is done only where such increased value arises from such direct, special and proximate

·cause, such as the draining of the land, or building bridges across streams running through the land, or making some other valuable improvement on or near the land by means of which the owner will be enabled to enjoy his land with greater advantage."

[11] In the instant case the fact that the Russell farm abutted upon the new road, when it previously abutted upon the old one, does not constitute according, to the *Williamson Case*, a peculiar benefit, nor does the fact that the new road was hard surfaced affect the principle that governs the determination of what are peculiar benefits in the case of farm land. The character of the roads is regulated largely by their vehicular use. Dirt roads are not adequate or suitable to travel or transportation by motor vehicles. The Russell farm, as such, has derived no peculiar or special benefits from the reconstructed road.

[12] Counsel for Shirley cite the cases of *Swift and Co.* v. *Newport News*, 105 Va. 108, 62 S. E. 821, 3 L. R. A. (N. S.) 404, and *Town of Galax* v. *Waugh*, 143 Va. 213, 129 S. E. 504, as establishing a different rule of law from that laid down in *Williamson* v. *Read, supra.* "It is a rule of construction that the opinion of an appellate court must be construed in the light of the facts in the particular case." In view of this rule of construction let us consider the above cases. Both ·cases involved damages for raising the grade of streets that had been previously established by dedication or ·condemnation. The grade of the streets was raised for the purpose of paving and otherwise improving them. This destroyed the abutters' ingress and egress from the street into their property.

At common law, as has been repeatedly held by the Supreme Court of this State, municipal corporations were not liable for consequential damages arising from

the change of the grade of a street, to one whose land was not taken, although his improvements had been made on his lot in conformity to a former grade. *Harrisonburg* v. *Roller*, 97 Va. 582, 34 S. E. 523; *Home Building Co.* v. *Roanoke*, 91 Va. 52, 20 S. E. 895, 27 L. R. A. 551.

This rule of law was changed by the Constitution of 1902 which provides in section 58 that the General Assembly "shall not .enact any law whereby private property shall be taken or damaged for public use, without just compensation."

The case of *Swift and Co.* v. *Newport News, supra,* was the first case to come before the Supreme Court involving the change in the law by the new Constitution. Therefore, it was a case of first impression in this State. However, the court found that other States, especially West Virginia and Illinois, had made similar changes, and their courts considered like questions.

It was contended in this case that as at common law municipal corporations were not liable to one whose land was not taken for consequential damages arising from the change of the grade of a street, although his improvements had been made on his lot in conformity to a former grade, and that notwithstanding the Constitution of 1902 forbids damage to private property for public use without just compensation, there being no statute providing a remedy for the recovery of such compensation, there could be no recovery in this case.

The court in overruling this contention said: "It was the design of the amendment to our Constitution under consideration to remove an existing mischief, viz: *The damaging* of private property for public use without just compensation, and a constitutional provision should never be construed as dependent for its effici-

ency and operation upon legislative will. 6 Am. & E. Encyc. of Law, 913, and authorities cited. So that when a provision of a Constitution, as does ours, no less than the provision in the Constitutions of the States of West Virginia and Illinois, forbids damage to private property, and points out no remedy, and no statute affords one, for the invasion of the right of property thus secured, the provision is self-executing and the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance. 6 Am. & E. Encyc. of L. 913, and authorities cited in note. And all statutes existing when such a Constitution is adopted or which might thereafter be passed, inconsistent with its provisions, are nullified by such constitutional prohibition, though legislation may nevertheless be desirable and valuable for the purpose of defining the right and aiding in its enforcement. Same authorities just cited, and *Oakland Paving Co.* v. *Hilton,* 69 Cal. 479, 11 Pac. 3.''

The court then proceeded to apply the principles of law above stated and show their effect upon statutes and ordinances passed prior to the change in the Constitution. In doing this, it was necessary to decide the effect of the new constitutional provision incorporating the words ''damage'' in the Constitution. The court quoted with approval on this subject from the United States Supreme Court in *Chicago* v. *Taylor,* 125 U. S. 166, 8 S. Ct. 820, 31 L. Ed. 638, on the effect of incorporating the word ''damage'' in the Constitution of Illinois (article 2, section 13), as follows: ''That the framers of that instrument evidently had in view the giving of greater security to private rights by giving relief in cases of hardship not covered by the previous Constitution, and for that purpose extended the right

to compensation to those whose property had been damaged for public use; that the introduction of that word, so far from being superfluous or accidental, indicating a deliberate purpose to make a change in the organic law of the State, and abolish the old test of direct physical injury to the corpus or subject of the property affected.    The new rule of civil conduct, introduced by the present Constitution, the court adjudged *required compensation* in all cases where it appeared there has been some physical disturbance of a right either public or private, which the plaintiff enjoys in connection with his property, and which gives it additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property, in excess of that sustained by the public generally."

[13] "A law cannot be enforced in a State no matter when passed which contravenes the provisions of the Constitution of the State."    *State* v. *Maynard*, 14 Ill. 419.

[14] Upon this branch of the case the court was of opinion that under the present Constitution, proper acts of the legislature (or ordinances of the city council) for the purpose of both obtaining the necessary consent and providing just compensation, are essential to the act of taking or damaging private property for public use but not absolutely necessary.    In other words, that the provisions of the present Constitution against the taking or damaging of private property for public use, without just compensation, were self-executing and repealed and displaced all existing law inconsistent therewith; that the charter of the defendant in error and the city ordinances, in so far as they authorized the change of the grade of streets, resulting in injury to the property of abutting lot owners, without

providing just compensation for such injury, are to
that extent repealed, and the plaintiff in error had the
right to bring its action.

Upon the trial in the lower court the chief issue was
the measure of damages in such cases, which by the
instructions given was decided adversely to the plain-
tiff, and the verdict and judgment were for the defend-
ant.

The Supreme Court did not consider the instructions
given or refused on the trial in detail, but determined
the question on principle and the decision accords with
the authorities generally. The question of just com-
pensation for the taking of the land had been pre-
viously settled by condemnation or dedication, so that
the abutter's rights were chiefly those of light and air,
and means of access to street. However, the plaintiff in
error insisted that as the action is brought to protect a
right secured to it by the new Constitution, it is at
least entitled to nominal damages.

The court held that the new Constitution has not
taken from the cities of the State the right to raise or
lower the surface of a street when necessity requires;
and thus destroy the owners' access to and from the
street. Under the former Constitution this was *dam-
num absque injuria.* The new Constitution provides
that just compensation shall be made for the damage
done. If no damage has been done, no right has been
violated, even though the established grade of the
street may have been changed. The gist of the action
is for substantial damages, and not an invasion of a
legal right, therefore, nominal damages, as such, are not
recoverable.

This action being for just compensation guaranteed
by the Constitution, the court quotes with approval
from the opinion in *Stewart* v. *Ohio River Ry. Co.*, 38

W. Va. 438, 18 S. E. 604, the proper measure of damages, "where the action is brought to recover damages, where no part of the property is taken, but merely damaged by a public improvement, the law is well settled that a recovery cannot be had unless the property claimed to be damaged has been depreciated in value by the construction of the public improvement. In other words, if the fair cash value of the property is as much immediately after the construction of the improvement, as it was before the improvement was made, no damage has been sustained and no recovery can be had."

The court then referred with approval to the case of *City Council* v. *Schrameck*, 96 Ga. 426, 23 S. E. 400, 51 Am. St. Rep. 146, where "the contention was made that is made by the plaintiff in error here, viz: That benefits deducted in measuring damages, where no part of the property is taken, but merely damaged by a public improvement, must be, as in a case where a part of the property is taken, and the action is to recover for damage to the residue, special and peculiar, and cannot include general benefits shared in common with other property in the neighborhood, and that the plaintiff was in any event entitled to recover *the cost of adjusting his property to the new conditions brought about by the public improvement;* but the court held otherwise, and in accordance with the rule sustained in the authorities just adverted to, the opinion saying that evidence as to the necessity of filling in the lot and raising the building on the lot, with the probable costs of such work, was admissible, not as furnishing a reason for allowance of such costs as independent item of special damages, but as a circumstance throwing light upon the general question of the diminution of market value."

Counsel for Swift and Company thus urged upon the court that the rule for measuring damages where property is taken or damaged is the same, but the court met the contention as follows:

"It is insisted that the rule established for assessing the damages to the residue, where a part of a tract of land is taken, by the decisions of this court before our Constitution was changed by inserting the word 'damaged' should be adhered to, and *Hickman* v. *Kansas City*, 120 Mo. 110, 25 S. W. 225, 23 L. R. A. 658, 41 Am. St. Rep. '684, is greatly relied on as supporting that view; but while the opinion in that case reaches the conclusion that the change in the Missouri Constitution (article 2, section 21), made in 1875, by inserting the word 'damaged' and coupling it with the word 'taken' secured to the property owner the right to compensation where his property is damaged, in the same terms as when it is actually invaded and taken, the later Missouri cases do not follow that view, but approve the rule for the measure of damages, where no part of the property of the plaintiff is taken, that was sanctioned in *Stewart* v. *Ohio River Ry. Co.* and other cases cited above, viz: 'If the fair market value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no damage has been sustained and no recovery can be had.' " *Swift and Company* v. *Newport News, supra,* pages 122-123 (52 S. E. 827).

It was further insisted by the plaintiff in error, that in the trial the jury should have been instructed that in estimating the plaintiff's damages they should disregard benefits, if any, to its property derived from the improvement, "in common with the property of others along said street," and that they should in any event find for the plaintiff in error the sum of $178.00, the

cost incurred in laying the new pavement, regardless of any benefits.

The court overruled this contention and held that the rule for measuring the damages in a case where *there is no taking of any part of* the property alleged to have been damaged by a public improvement, is different from that where the property is damaged by the public improvement, and cited the case of *Blair* v. *Charleston*, 43 W. Va. 68, 26 S. E. 341, 35 L. R. A. 856, 64 Am. St. Rep. 837, as deciding that exact question. But the court did not thereby approve the reasoning of Judge Brannon in the *Blair Case.*

The court concludes, in view of the measure of damages, that the evidence of experts, *i. e.*, opinion evidence, is admissible upon the question, whether the property has been enhanced or depreciated in value by the public improvement.

In the case of *Nelson County* v. *Loving*, 126 Va. 283, 302-303, 101 S. E. 406-412, Judge Sims said: "It may be difficult, if not impossible, to find a satisfactory distinction in principle between benefits due to street or road improvements which are conferred on abutting land and benefits conferred on land very nearby but not actually abutting on the street or road which is improved and the rule laid down in the *Swift and Company Case* may lead in principle to the conclusion that all benefits which are conferred on the land by the improvement of a street or public road should be taken into consideration in ascertaining whether land has been damaged by the public improvement, but if so, this would seem to be a conclusion at variance with the earlier views expressed by this court on that subject, *James River and Kanawha Co.* v. *Turner*, 9 Leigh (36 Va.) 313; and note to 50 Va. Rep. Ann. (10 Gratt.

page 13), and with the holding in the great majority of the States—only seven or perhaps eight of the States having adopted such conclusion. 2 Lewis on Em. Dom. sections 687-692. But this court has not yet, as aforesaid, gone so far in its holding."

It is true that the views thus expressed by Judge Sims, as to the measure of damages enunciated in the *Swift and Company Case,* was not necessary to the decision of the *Loving Case,* but the court was clearly of the opinion that the new Constitution made no change in the rule for measuring damages where the property was taken, and that same rule applies where the property was damaged.

The trial court in the case of *Town of Galax* v. *Waugh,* 143 Va. 213, 129 S. E. 504, held that the *Loving Case* decided that the enhanced value to abutting business properties upon the same street by reason of raising the grade of the street and paving the same was a general community benefit, and could not be considered in fixing the damages to the property by the public improvement.

Upon review of the *Galax Case* Judge Burks cites the cases that established the rule that excludes community benefits in estimating damages to the residue under the former Constitution; reverses the trial court, and reaffirms the case of *Swift and Company* v. *Newport News, supra.*

He does not overrule the measure of damages in cases where the land is taken, but states the question decided in the *Galax Case,* on page 225 (129 S. E. 507), as follows: "*Williamson* v. *Read,* 106 Va. 453-456, 56 S. E. 174, and *Arminius Chemical Co.* v. *Landrum,* 113 Va. 7, 11, 73 S. E. 459, 38 L. R. A. (N. S.) 272, Ann. Cas. 1913D, 1075, exclude community benefits in estimating damages to the residue, and it may be con-

ceded that *community benefits* are not to be considered
in estimating damage to the property not taken, either
before or since the adoption of the present Constitu-
tion, but none of the cases cited settle the question as
to the effect of the change of grade of a street resulting
in special benefits to all property on the same street."

[15, 16] When land is condemned for a *street or road
the right of every citizen to use same, without discrimina-
tion,* for travel and transportation constitutes the
public use, which alone justifies the exercise of the
power of eminent domain. Different courts have
assigned different reasons why the enhanced value to
the abutter's land cannot be considered in estimating
the damages to the residue, such as, the abutter will be
thereby compelled to contribute to the cost of the
improvement; that under the Constitution just com-
pensation for the land taken unless physical damage
can only be offset by physical or peculiar benefits; or
that the enhanced value to the residue by the pro-
jected road is too remote and speculative, and amounts
only to a guess. Whatever may be the true reason for
the rule of law, it is too firmly established as a rule of
constitutional law to be changed by the courts.

Nor was it the intention of the framers of the new
Constitution to change said rule when they inserted
the words "or damage" therein, as may be seen from
the language used, construed in the light of the mis-
chiefs they designed thereby to remedy.

When the streets or roads (established by con-
demnation or dedication) are built, the abutters and
all other citizens have the privilege of using same for
travel and transportation, but the abutters at their
own expense must adjust their lots and buildings so
they may enjoy access to and from said public improve-
ment. After the abutters have adjusted their lots and

buildings to the grades of the street, they acquired no vested right in said grades so they could control same, but the power to grade same remained in the State agencies for the benefit of the public. At common law, as above stated, where the grade was changed and the abutters were damaged thereby, it was *danmum absque injuria.* But their privilege to use the streets or roads are not taken from them, nor were they compelled to contribute to the improvement thereof. Cases frequently arose where the abutting property was damaged or depreciated in value by raising or lowering the grade of streets and roads, without compensatory advantages, hence the Constitution of 1902 provided that property "shall not be taken or damaged for public uses without just compensation."

The property owner has the burden of proving that his property has been *damaged* in consequence of the street improvement. Consequential damages can only be ascertained by proof of the fact that the improvement has depreciated the value of his property. If his property is worth as much after the improvement as before he has suffered no damage, therefore is entitled to no compensation. Nor if the improvement has greatly enhanced the value of his property can he be made to answer for the same. This is the just and reasonable rule established by the Constitution.

The measure of damages or elements which constitute just compensation where the land is taken, has not been changed by the Constitution, and according to the *Galax Case* is different from that where the property is damaged by the change of the grade of a street or road.

In view of the public importance of the question presented for our consideration in the case at bar, we have felt compelled to consider carefully the cases

heretofore decided on the subject and the principles of justice upon which they are based, notwithstanding this opinion has been extended to a greater length than we desired.

[17] While the other members of the court agree with the result of the conclusions reached in the instant case, they do not wish to be understood as holding that the increase in the market value of land, brought about by the construction of a public highway, should not be taken into consideration under any circumstances in assessing the damages to the adjacent property in condemnation proceedings, but are of the opinion that the question of whether such increase in market value does or does not constitute a peculiar benefit, must necessarily depend upon the facts and circumstances of each particular case; although the general rule must be taken as established in this opinion.

For the reasons above set forth, we find no error in the judgment of the circuit court of Fauquier county, and the same is affirmed.

*Affirmed.*