# Richmond

## MINTON W. TALBOT v. CITY OF NORFOLK.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Hudgins and Browning, JJ.

The opinion states the case.

*James G. Martin*, for the plaintiff in error.

*John N. Sebrell* and *Jonathan W. Old, Jr.*, for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is a condemnation proceeding in which the landowner is claiming that the sum awarded him by way of just compensation is inadequate.

Granby street in the city of Norfolk extends from the Custom House, in the heart of that city, to Ocean View. In part it passes through an unbuilt-up section of the city, and in such a section is the Talbot land, fronting thereon. The city desired to shift and widen this street, and as a part of that development it became necessary to take over the lot in controversy. It is irregular in shape, with a street frontage of 632 feet. For 228 feet it has a depth of seventy-five feet; for 230 feet its depth averages about sixty-five feet; and for 172 feet it continues on as a narrow triangle with an average depth of something like twenty-five feet. Its area is 36,000 square feet. When this contemplated change is made Talbot's land will still front on Granby street. No claim has ever been made for damage to the residue of his property. He claims compensation for land taken and nothing more.

In proper proceedings a commission of competent gentlemen was appointed to assess damages. On it were Thurmer Hoggard, A. Gordon Stephenson, W. B. Baldwin, Paul T. Collins and S. G. L. Hitch, any three of whom were empowered to act.

The court designated the 10th of February, 1930, at two o'clock p. m., for these commissioners to meet upon the premises. At the time designated, they met, viewed the land, heard evidence, and desiring instructions from the

court, adjourned for that purpose. Later, on the 7th of March, 1930, four of them (Collins absent) again met, received written instructions and proceeded to consider of their judgment. Three of them, Baldwin, Stephenson and Hitch, reported that the value of the land to be taken was $4,000.00. Hoggard dissented, saying that in his opinion it was about $8,000.00.

These instructions were asked for by Talbot and were refused by the court:

"1.   Your first duty is to fix the value of the land actually to be taken without regard to effect upon other lands of Mr. Talbot.

"2.   If Mr. Talbot claims additional damages to other property you may deduct from any damages to other property of Mr. Talbot any benefits accruing to such other property."

It then proceeded to instruct the commission as follows:

"1.   The court instructs the commissioners that it is their duty to ascertain what will be a just compensation for the land taken; and in performing that duty they should go upon the land, examine it, hear testimony and consider all the facts and circumstances surrounding the situation as it actually exists and thus ascertain what is the value of the land to be taken.

"And if the question of damages to the adjacent property of the owner arises in the case it will then be your duty to assess the damages, if any, to that property, beyond the peculiar benefits that will accrue to such adjacent property from the construction of the works contemplated. And in doing this it will be necessary for you to consider the uses of that adjacent property for all purposes.

"2.   The court instructs the commissioners that it is the actual present value of the land with all its adaptations to general and special uses, and not its prospective or speculative or possible value based upon future expenditures and improvements, that is to be considered."

Since Talbot claimed no damages to property not taken, instruction No. 2, tendered on his behalf, need not be considered.

His instruction No. 1 merely told the jury that he was entitled to receive by way of just compensation the value of his land taken, unaffected by any other consideration.

In *Town of Galax* v. *Waugh*, 143 Va. 213, 129 S. E. 504, 507, Judge Burks, in discussing *James River and Kan. Co.* v. *Turner*, 9 Leigh (36 Va.) 313, said: "This case settles the proposition that for the land taken the owner is entitled to receive full compensation in money, without deduction for any benefits, but that, as to the land not taken, there is to be deducted from the damage sustained peculiar benefits received, and 'if the damage to the residue of the tract fall short of such peculiar benefits,' the deficiency is not to be charged to the owner, and, it would seem, that he would have no cause of action for damage to such residue." See, also, *Shirley* v. *Russell*, 149 Va. 658, 140 S. E. 816; *City of Norfolk* v. *Chamberlain*, 89 Va. 196, 16 S. E. 730; *Mitchell* v. *Thornton*, 21 Gratt. (62 Va.) 164; and Code, section 4368.

From these authorities it appears that Talbot was entitled to be paid in money for his land taken.

This rejected instruction correctly states the general law and might with propriety have been given. The court did, in its own instruction, afterwards, in more general terms, undertake to deal with and to cover the same subject.

In any event, this commission should have been told how values are to be determined. The owner is entitled to just compensation, and just compensation is sometimes said to be fair market value. *Duncan* v. *State Highway Comm.*, 142 Va. 135, 128 S. E. 546; *Appalachian Power Co.* v. *Johnson*, 137 Va. 12, 119 S. E. 253. Market value has been defined as "the price which one, under no compulsion, is willing to take for property which he has for sale, and which another, under no compulsion, being desirous

and able to buy, is willing to pay for the article." *Chicago Ry. Equipment Co.* v. *Blair* (C. C. A.) 20 Fed. (2d) 10, 13.

■  Conditions are conceivable in which this rule would not work. A strip of land a foot wide across the front of a lot, otherwise valuable, might make that lot practically worthless, and force the owner to pay for this strip some extravagant sum. A stranger, speculating upon the necessities of that owner, might also be willing to pay in the open market for this foot wide strip some excessive price. Here market value would not be the standard of compensation, for market value would be nuisance value and should not weigh with a condemnation commission.

■  In the instant case the fact that the strip to be taken might be used as a key to other Talbot lands is no element of damages.

■■  The court did, in its instruction given and numbered 2, tell the commissioners that they were to determine the present actual value of the land, and in its instruction numbered 1, it told them that they were to consider all facts and circumstances surrounding the situation.

These instructions find ample support in decided cases, (*Richmond, etc., Co.,* v. *Chamblin,* 100 Va. 401, 41 S. E. 750; *Tidewater R. Co.* v. *Cowan,* 106 Va. 817, 824, 56 S. E. 819; *Shirley* v. *Russell,* 149 Va. 658, 664, 140 S. E. 816). They were given, as we have seen, and in this there is no error, but proper principles may be misapplied, and to guard against such misapplication the commission should have been told, not only to give no weight to nuisance values, but also to give no weight to the fact that when this lot had been taken, and when Granby street had been widened, the Talbot lands would have the same street frontage that they had before—that other lands of his would, by reason of the development, be made more valuable. Under no possible circumstances could that increase be charged against or credited on the sum actually due for land taken.

They are surrounding facts and circumstances, but they were not relevant facts and circumstances to be considered either as augmenting or diminishing damages. If they were so considered error was committed.

To sum up the situation with respect to these instructions, it may be said that, generally speaking, those rejected and those given, embody sound principles of law, but as applicable to the case in judgment they should have been hedged about with the cautions noted.

■■ When we come to consider the amount of the award, we find that the commission has wide discretion. It weighs the evidence in connection with its own view of the premises and of proper surrounding facts and circumstances, and its judgment will not be set aside unless grossly out of line. *Chairman of Highway Commission* v. *Fletcher*, 153 Va. 43, 149 S. E. 456; *Hannah* v. *City of Roanoke*, 148 Va. 554, 139 S. E. 303; *Fonticello Mineral Springs Co.* v. *City of Richmond*, 147 Va. 355, 137 S. E. 458; *Appalachian Power Co.* v. *Johnson*, 137 Va. 12, 119 S. E. 253. But these cases likewise make it plain that this qualified immunity of a commission's findings has no application when based upon erroneous principles. If it includes some improper element of damage it should be set aside, and it should be set aside if some proper element is excluded.

This appeared during the direct examination of Mr. Stephenson, one of the commissioners:

"Q. In other words, the amount of your award was decreased because Mr. Talbot had other land which would be on Granby street when this piece was cut off, wasn't it?

"The court: Was that the exact question you were struggling with before getting the instructions?

"Mr. Martin: Yes, your Honor.

"The court: You want to prove it would have been more if they had followed your view rather than the view adopted by the court?

"Mr. Martin: Yes, and the view followed by the court was not an absolutely clear cut view.

"The court: They had to take into consideration all of the property and who owned it as the property actually existed and not as to what might exist.

"Mr. Martin: We argued it, your Honor.

"Q. In other words, Mr. Stephenson, if Mr. Talbot had owned this piece of land and no other land there you would have awarded him a much higher award than you did, would you not?

"A. That is true.

"Q. But because he owned other land behind it which would be thrown on Granby street, you decreased your award?

"A. We made the award by taking into consideration all the facts surrounding the case under the instructions as delivered to us by the attorneys at that time.

"Q. Isn't it a fact that one of the greatest reasons was that Mr. Talbot did own other property in the rear of this?

"A. That was considered."

Here we find that the court itself was of the opinion that the Commission should take into consideration "who owned it"—Talbot's holdings. Whether nuisance value be relevant or irrelevant, it would have been the same no matter who chanced to hold the hinterland. This commissioner has said that his award would have been greater but for the fact that the improvement, when made, would have still left Talbot on Granby street.

In his cross-examination this appears:

"Q. Mr. Stephenson, wasn't the idea that if Mr. Talbot owned this piece of land and didn't own that piece, that the back piece belonged to somebody else, it would have more value by reason of the fact that it furnished a key to get to the balance of the land?

"A. Certainly.

"Q. It didn't give this particular strip of land any peculiar value, the fact that two who owned it, other than it furnished an avenue or means of getting to the other land?

"A. Not at all."

Just what this witness meant by these answers given in cross-examination is not perfectly plain, apparently he thought that the ownership of the land to the rear affected the value of that to be taken whether that ownership was in Talbot or in another. However this may be, his final statement made in redirect examination is clear enough. That statement is:

"Q. If you divorced this piece of land from the adjoining land, or if it was owned independently by some other party and there was nothing behind it, isn't it a fact, as you said before, that it would have a value of at least twice $4,000.00?

"A. Yes."

We have the final flat statement of this witness to the effect that Talbot was given less for this land than he would have been given had there been no land at all beyond it—than he would have been, for example, had it bordered on Tanner's creek.

Mr. Hoggard, the dissenting commissioner, who was willing for the city to pay $8,000.00, thought that this lot, with speculative elements of damage eliminated, was worth $15,000.00, although under the court's instructions as he construed them, he was willing to reduce his estimate to $8,000.00.

The instructions given embody proper statements of the law, but trouble has come about because two at least of the commissioners thought that the award should be diminished because Talbot owned the entire tract of land and because that tract would still front upon Granby street after changes contemplated had been made.

Talbot is not entitled to nuisance damage and he should

not be made to suffer because he is the owner of adjoining lands. He should be paid just what the fair market value of his would be. The same general principles apply in determining the value that would apply if it were bounded on the front by Granby street and on its rear by a river.

This finding and judgment must be set aside, not for any error made by the court relative to instructions given or refused, but because those given were misconstrued and misapplied, certainly by some members of the commission. The case is remanded for such action as may be deemed proper and as is in accord with this opinion.

*Reversed and remanded.*