STEMMONS et al. v. DALLAS POWER & LIGHT CO. (No. 8227.)

(Court of Civil Appeals of Texas. Dallas. April 19, 1919. Rehearing Denied May 24, 1919.)

EMINENT DOMAIN ⬗⟶318—CONDEMNATION OF LAND FOR USE OF "POLES"—TOWERS.

In a proceeding to condemn land for the use of electric power lines, under Vernon's Sayles' Ann. Civ. St. 1914, arts. 1283c and 1283d, the provision of the latter article that lines shall be constructed upon suitable "poles" means either wood or metal poles, and in view of the land being subject to overflow, and the necessary carrying of numerous wires and the distance between poles, the statute must be construed to include towers as well as "poles."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Pole.]

Appeal from District Court, Dallas County; Kenneth Foree. Judge.

Suit by L. A. Stemmons and others against the Dallas Power & Light Company. Judgment for defendant, and plaintiffs appeal. Judgment affirmed.

Leake & Henry, of Dallas, for appellants.
Templeton, Beall, Williams & Callaway, of Dallas, for appellee

RAINEY, C. J. This is an appeal from a judgment dissolving a temporary injunction. Appellee, the Dallas Power & Light Company, sought to condemn property of appellants, having the right to do so under the statutes for the purpose of "constructing, creating, operating, and maintaining thereon an electric transmission line or lines, consisting of a variable number of wires, and in the said application or petition for condemnation it was stated to be the purpose of the appellee to condemn a right of way over appellants' said land for the erection of three steel towers of large proportions and other structures." It was further stated in the application for condemnation that the towers proposed to be constructed would be of steel, with open or lattice work construction, and placed in the center of three square tracts of land, two of said tracts being 50 feet square, and the other tract being 25 feet square, and the said towers at the base occupying a space of not exceeding 20 square feet, said towers to be protected by driftwood protectors of wood with open or lattice work construction, not over 20 feet in height, triangular shape, and so placed within said 50-foot squares as to protect said towers in times of high water. Appellants' petition charged that appellee's application for condemnation made no proposal for the construction of the condemnor's line through the appellants' property upon poles, as permitted or authorized by law, but

---

only for the construction of structures of highly disadvantageous character upon the premises of appellants, and appellants pray that an injunction issue.

"The defendant filed its answer, which was marked 'Defendant's Plea in Abatement,' in which it set forth in the existence of the condemnation proceedings, not specifically denying that the purpose of the condemnation was as alleged in the plaintiffs' petition. The answer averred an award by the said commissioners appointed by the county judge, a deposit of double the amount of the award, and the filing of a bond for the payment of costs, as required by the condemnation statute, all of which, it was averred in the answer, had occurred prior to the issuance and service of the temporary writ of injunction; that the said proceeding was pending in the county court, where it had been regularly instituted, and that the plaintiffs' sole and only remedy was by proper appeal from the award of the commissioners; that plaintiffs had a full, adequate, and complete remedy at law in the condemnation proceeding, which said remedy was exclusive of all other remedies; that if it should be determined, upon final decision and judgment in said condemnation proceedings, that the right to condemn the property in question did not exist, then the defendant, which was plaintiff in the condemnation proceedings, would be required by law to surrender possession of the property taken by it, and the county court would be required by law to so adjudge, and to order a writ of possession for the property aforesaid in favor of plaintiffs, who were defendants in said condemnation proceeding; that the condemnation proceedings so instituted and pending between the parties in the county court constituted a complete bar to plaintiffs' suit and right to injunction in this cause; that the land of plaintiffs, over which the right of way was sought to be condemned, was river bottom land, subject to periodical overflows by high water, lying in a state of nature, uncultivated and unoccupied. The answer prayed that the suit be abated, and the district court not take any further jurisdiction or cognizance of the cause than to enter an order abating and dismissing the same."

On trial, under the rule to show cause, without hearing other evidence than the reading of the bill and answer, the court rendered judgment dissolving the temporary injunction and dismissing the cause from the docket of the court.

The trial court's finding of facts, which we adopt, is as follows:

"(1) Defendant is a corporation duly incorporated under the laws of this state for the purpose of generating, manufacturing, transporting, and selling gas, electric current, and power, and among its corporate powers has the right of condemnation conferred upon it by law.

"(2) On the ―― day of September, 1918 and prior to the filing of plaintiffs' petition herein, and after the parties had failed to agree on the damages, defendant caused condemnation proceedings to be instituted in the county court of Dallas county, at law, for the purpose of condemning a right of way through plaintiffs' lands in order to construct and maintain a transmission line along and over said right of way.

"(3) In pursuance of said condemnation proceedings the judge of said county court appointed three disinterested freeholders as special commissioners to assess the damages resulting from the condemnation of said land.

"(4) Said commissioners duly qualified as such, and appointed a day and place of hearing, notifying plaintiffs thereof, and said commissioners met at the time and place so appointed, and proceeded to hear the parties. Plaintiffs appeared before said commissioners at said time and place, and filed and urged their claim for damages, and said commissioners heard the evidence, and assessed plaintiffs' damages at the sum of $450.

"(5) Thereafter, on the ―― day of September, 1918, defendant here (plaintiff in the condemnation proceedings) deposited in said county court, subject to the order of plaintiffs (defendants in said condemnation proceedings), the sum of $450, the amount of said award, and in addition thereto defendant then deposited in said county court the further sum of $450, to be held exclusively to secure all damages that may be awarded or adjudged against it in said condemnation proceedings, and paid all court costs awarded against it in said proceedings, and on the day and date aforesaid defendant filed its bond in said county court in the sum of $200, conditioned that it will pay all further costs that may be adjudged against it in said condemnation proceedings, either in the court below or upon appeal. Plaintiffs filed their opposition to the report of said commissioners and said condemnation proceedings, and now and were at the time of the filing of the petition and the issuance of the temporary writ of injunction herein pending in the county court of Dallas county, at law.

"(6) Plaintiffs filed their petition in this suit, and secured the issuance of a temporary writ of injunction herein on two alleged grounds, that said condemnation proceedings were void, to wit: (a) Because defendant proposed to use towers or metal structures instead of wooden poles for the purpose of constructing and erecting said transmission line over said right of way; and (b) because the city of Dallas had neither permitted nor required defendant to institute said condemnation proceedings.

"(7) The judge of the Fourteenth district court by his order caused a temporary writ of injunction to be issued, pending hearing, returnable to this court, and on the ―― day of September, 1918, the parties appeared and the hearing was duly had.

"(8) Defendant filed and presented its answer by way of a special plea, urging that the temporary writ of injunction be dissolved, and that the suit be dismissed because of the pendency of said condemnation proceedings, contending that such proceedings were exclusive of all other rights or remedies, and that the plaintiffs were relegated to such condemnation pro-

ceedings for any relief to which they might be entitled.

"(9) Plaintiffs' petition contained no allegations of value either of the land sought to be taken or amount of damages thereto. Said petition was partly sworn to positively and partly on information and belief. The allegations of defendant's answer were sworn to positively and unequivocally. Both the petition and answer are here referred to for a full statement of the contents of each respectively.

"(10) No evidence was introduced, but oral argument was heard. In the argument plaintiffs admitted the pendency of the condemnation proceedings (so called), but claimed same were void because (1) defendant proposed to erect towers or metal structures in lieu of wooden poles, and (2) because, the land being situated in the city of Dallas, said city must either permit or require such condemnation proceedings as a condition precedent. Defendant contended that since condemnation proceedings were pending in the county court at the time of and prior to the filing of the petition in this suit, and since said county court had exclusive original jurisdiction of the subject-matter involved, and plaintiffs had an adequate remedy at law in that court, the condemnation proceedings aforesaid constituted, therefore, a complete bar to this suit. Defendant further contended that, if such condemnation proceedings were void, it would be presumed that the county court would so find and adjudge."

Appellants' first assignment of error is:

"The court erred in rendering judgment dismissing the cause in the absence of any testimony having been adduced upon the trial of the cause."

Appellee's counsel makes the following statement:

"As found by the trial court, no evidence was introduced, but oral argument heard. The attorneys representing the respective parties in this cause were the same as the attorneys representing said parties in the condemnation proceedings in the county court, and said attorneys were, of course, familiar with all the facts relating to said condemnation proceedings, including the state of the pleadings therein. Every finding of fact by the court is abundantly and amply sustained by the pleadings filed and by the admissions, statements, and declarations of appellants' counsel in the argument on the hearing to dissolve the temporary restraining order. There was no contention or controversy in regard to the facts whatever. The facts were admitted, and repeatedly gone over and referred to and discussed by appellants' attorney in his argument before the trial court. Appellants' contention in the court below was twofold; First, that, under the statute authorizing condemnation proceedings, such proceedings, instituted for the purpose of erecting steel or metal towers instead of wooden poles, were void; and, second, that, since the proceedings affect land situated within a municipal corporation, either the permission of the city to proceed, or its requirement that such proceedings be had, was a condition precedent. Appellants seem to have entirely abandoned the second position on appeal. There was absolutely no contention made or point raised on the hearing of this cause as to the sufficiency of the pleadings or the regularity of the proceedings pending in the county court, except as above stated. All the facts being admitted and agreed to by the parties in oral argument, there was no occasion for the introduction of testimony. On the declarations and admissions contained in the pleadings, as well as declarations and admissions of counsel at the hearing, the trial court filed findings of facts."

If the plea to the jurisdiction was rightfully sustained there was no error in dismissing the case. The question of jurisdiction of the district court depends upon whether or not the county court had taken jurisdiction of the condemnation proceedings to condemn appellants' land for the purpose of erecting a transmission line.

Our statutes (Vernon's Sayles' Civil Statutes) granting power to erect such lines and condemn land for that purpose provide, as set out in article 1283c, as follows:

"Shall have the power to generate, make and manufacture, transport and sell gas, electric current and power to individuals, the public and municipalities for light, heat, power and other purposes, and to make reasonable charges therefor; to construct, maintain and operate power plants and substations and such machinery, apparatus, pipes, poles, wires, devices and arrangements, as may be necessary to operate such lines at and between different points in this state; to own, hold, and use such lands, rights of way, easements, franchises, buildings and structures as may be necessary for the purpose of such corporation."

And article 1283d provides that—

"Such corporation shall have the right and power to enter upon, condemn and appropriate the lands, rights of way, easements and property of any person or corporation. * * * The manner and method of such condemnation shall be the same as is provided by law in the case of railroads, pipe lines, telephone and telegraph lines; provided, that such lines shall be constructed upon suitable poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet."

Article 1283c, it will be noted, provides for constructing, maintaining, and operating power plants, and such machinery, apparatus, pipes, poles, wires, devices, and arrangements as may be necessary to operate such lines at and between points in the state. This power is very broad and comprehensive, and appellants' counsel contend that the language used in article 1283d, viz. "provided, that such lines shall be constructed upon suitable poles in the most approved manner and maintained at a height above the ground of at least twenty-two feet," requires wooden poles to be used instead of steel towers. We do not concur in this contention. The Century Dictionary defines a "pole" to be "a piece of wood (or metal) of much greater height than thickness"; hence we see a pole

may be constructed of metal. The statute provides that the line shall be constructed upon- "suitable poles," in the most approved manner. When we consider the object of the construction of said line, the land being subject to overflow, the number of wires to be carried, and the distance between points to be reached, the evident intention of the Legislature was to construct said lines so as to make them strong and durable, and of such material and in such manner as was necessary for the purpose intended. The use of towers, as defined, being suitable, is embraced by the word "pole," and meets the requirements of the statutes; and therefore we hold that, as the statutes give to the county court absolute jurisdiction of condemnation proceedings, and the application nor the facts neither showing that the appellee was not a trespasser in endeavoring to get the land condemned, the district court was without jurisdiction to grant the injunction, and jurisdiction was vested in the county court to pass on all matters pertaining to such proceedings. Johnston v. O'Rourke & Co., 85 S. W. 501; Ellis v. Railway Co., 203 S. W. 172.

The judgment is affirmed.