**HALL v. WILBARGER COUNTY et al.**

No. 3474.

Court of Civil Appeals of Texas. Amarillo.
March 18, 1931.

Rehearing Denied April 15, 1931.

through appellant's farm, **which consists** of about 100 acres situated in said county and lying about three miles west of the town of Vernon, the county seat thereof.

In 1928, the commissioners' court of said county, acting by and through its county engineer, proceeded to lay out and have constructed diagonally across said farm a federal-aided state highway, 80 feet in width, and which is known as Lee Highway, being State Highway No. 28.

It does not appear from the record before us that a petition signed by freeholders of the precinct through which it was proposed to build the road had been filed seeking the establishment of such road, nor that notice and advertisement of such intention was ever issued or made. It does not appear from the record that appellees filed any pleading of any kind in such proceeding until a few days before the trial in the said county court.

After the case was filed in the county court, and on February 22, 1930, appellees filed therein what is designated "Answer to the Contest." This pleading contains a general demurrer, general denial to appellant's pleading, and the further allegations that all the requirements of the laws of Texas with respect to the condemnation of private property for highway purposes had been complied with, and that appellant's land had been taken in a lawful manner, and that such proceeding under which the land was taken was in all things lawful and authorized under the laws of the state of Texas; that a jury of view had been appointed, and that appellant had participated in a hearing before such jury of view, which found that 3.21 acres of his land would be taken for the construction of such highway, which highway extends across Wilbarger county. It was further alleged that the reasonable cash value of the land so taken was, at the time of the taking, $200 per acre, and that the amount of damages sustained by appellant as a result of the taking of his land and the building of the road across his farm was $742, which sum the said county tendered to him. It was further alleged that the sum of $200 per acre allowed by the jury of view' was more than the actual cash value of the land at the time it was taken for highway purposes, and that, in fact, aside from the value of the land actually taken, appellant had sustained no damages, but, on the contrary, the benefits accruing to him and the remainder of his land by reason of the building of the road are far in excess of any damages sustained by him.

This pleading further alleged that the land taken by said county was for the purpose of laying out, constructing, and maintaining across such county what is known as Lee Highway. The pleading does not describe

Storey, Leak & Storey, of Vernon, for appellant.

Luther Hoffman, of Wichita Falls, and J. V. Townsend, of Vernon, for appellees.

FLETCHER, Special C. J.

This is an appeal from a judgment rendered in the county court of Wilbarger county, Tex., in a condemnation proceeding, wherein the commissioners' court and the county court of said county undertook to condemn a right of way for a federal-aided state highway

appellant's land. It wound up with a prayer that appellant's damages be ascertained and that a decree be entered condemning the land taken for said right of way and that title to such easement be vested in Wilbarger county.

In reply to appellees' pleading, the appellant filed his answer and cross-action, which contains a general demurrer, and pleas attacking the jurisdiction of both the commissioners' court and the county court, as follows:

(a) Because the proceeding is one to condemn property for a state highway known as Lee Highway No. 28, and the commissioners' court of Wilbarger county had no authority to institute or conduct such a proceeding, such authority being vested by law in the state highway commission under article 6674n, Vernon's Ann. Civ. St.

(b) Because, under the statutes, before appellant's land can be condemned for state highway purposes the state highway commission must make a bona fide effort to agree with the owner of land upon the amount of damages, which was not done prior to the institution of the condemnation proceeding.

(c) Because the aforesaid statute contemplates that any proceeding to condemn land for a state highway shall be instituted by the Attorney General in behalf of the state of Texas, wherefore, Wilbarger county nor its commissioners' court nor the county court thereof, nor any officer thereof, had any authority to institute and prosecute the proceeding, and therefore the county court of Wilbarger county has no jurisdiction.

(d) Because no petition, as required by article 6705, R. S. of 1925, was ever made or filed with the said commissioners' court, praying for the establishment of such road, and no notice by written advertisement for twenty days of the intended application was posted, as required by said article 6705. That, as shown by the orders of the commissioners' court, and as stated in the road notice issued by the jury of view to complainant, the proceeding to open and establish the road across complainant's land was instigated by only three persons, without a petition, and that the commissioners' court, upon request of said parties and without authority of law, proceeded to appoint a jury of view to lay out said road; that because such action was taken by the commissioners' court and the county judge without a petition, and because notice of the appointment of the jury of view was not served, as required by statute, all action taken by the jury of view and the report filed by such jury and the attempted award of damages are void and confer no jurisdiction upon this court to condemn said premises, nor to try the case.

Appellant alleged that thereafter he filed with the jury of view, under protest, his claim for damages, itemized as required by law, aggregating $5,000, which claim recites that it is made without prejudice to or waiver of any of defendant's (appellant's) legal rights. Appellant further alleged several items and causes of injury and damage to him and his land by reason of the construction of said highway across his farm, and prayed for his damages.

After the parties had introduced their evidence, the court submitted the case to the jury upon special issues, in response to which the jury found that the value of appellant's land taken for said highway right of way, at the time it was taken, was $200 per acre; and that there was no difference between the market value of the remaining portion of appellant's land just prior to and just after the construction of the paved road.

After the verdict of the jury was returned and before the judgment was entered of record, it appears that appellees filed in the proceeding and attached to their pleading an exhibit which contained a description of appellant's land. The exhibit appears to have been filed and attached to the said pleading without the knowledge or consent of appellant.

Upon the verdict of the jury the court rendered judgment condemning appellant's land so taken for highway purposes, vested the title to such easement in Wilbarger county, and allowed appellant $642 damages, which sum is the actual market value of that part of the land appropriated for the highway as found by the jury.

The record further discloses that the road in question was laid out and constructed as a state highway and that it is designated as such; that the right of way is 80 feet wide; and that there has been laid upon that right of way a pavement 18 feet in width. Extending west the road enters appellant's land at an angle of about forty degrees south of west. The road continues on that angle for a distance of 1,746 feet to a point where it leaves his farm. The farm is in the form of a rectangle, the longest lines of which extend north and south. The road cuts the farm in two tracts, the tracts being about equal to each other in area, forming an acute angle on the east and west sides of the farm.

The state highway commission is not a party to this suit, and it does not appear that such commission participated in the condemnation proceeding in any manner.

■■ The power to exercise the right of eminent domain must be conferred by statute. The proceeding is a harsh one, and the provisions of the statutes enacted upon the subject should be strictly followed and strictly construed in favor of the owner of the property sought to be taken thereby. When conferred, the exercise of the right is a special statutory proceeding. In speaking

with reference to the pleadings and proof in special statutory proceedings, our Supreme Court, in the case of Mingus v. Wadley, 115 Tex. 551, 285 S. W. 1084, 1089, through Chief Justice Cureton, said:

"Having determined that the above named requisites of a cause of action to set aside an award and the county designated by the statute are jurisdictional, the conclusion follows that they must be alleged and proven. A proceeding of this type is a special one brought under statutory power to enforce a statutory cause of action in derogation of the common law, and there can be no presumption of jurisdiction. Jurisdictional allegations are an integral and necessary part of the case, without the statement of which there is no cause of action. * * *

"The rule is well settled in most jurisdictions and in this state 'that there is no presumption of jurisdiction where a court, although it is one of general jurisdiction, exercises special statutory powers in a special statutory manner or otherwise than according to the course of the common law, since under such circumstances the court stands with reference to the special power exercised on the same footing with courts of limited and inferior jurisdiction.'"

The rule above stated has been held to apply to condemnation proceedings. Ryan v. State (Tex. Civ. App.) 21 S.W.(2d) 597, in which the court said: "The only right of eminent domain and condemnation proceeding to acquire same is that given by statute. The general rule is that where the cause of action and remedy for its enforcement are derived from the statute, its provisions are mandatory and exclusive and must be complied with or the action is not maintainable."

Article 6705, R. S. of 1925, provides: "The commissioners court shall in no instance grant an order on an application for any new road, or to discontinue an original one, or to alter or change the course of a public road, unless the applicants have given at least twenty days notice by written advertisement of their intended application, posted up at the court house door of the county and at two other public places in the vicinity of the route of such road. All such applications shall be by petition to the commissioners court, signed by at least eight freeholders in the precinct in which such road is desired to be made or discontinued, specifying in such petition the beginning and termination of such road, provided an application to alter or change a road need not be signed by more than one freeholder of the precinct."

■■ Appellees' petition filed in the court below upon which the case was tried fails to allege that the requirements of this statute were complied with in laying out the road. Such matters are jurisdictional in a proceeding of this kind, and the petition fails to state a cause of action. The trial court should have sustained appellant's general demurrer. Haverbekken v. Hale, 109 Tex. 106, 204 S. W. 1162.

It is true appellees pleaded that all the requirements of the laws of the state of Texas with respect to condemning appellant's land for such highway purposes had been complied with. The allegation is not tantamount to a specific allegation that a petition signed by eight freeholders of the precinct in which the road is located was made and that written advertisement had been made of the intended application to locate such road as required by the statute. The allegations in the petition are too general and are only conclusions that the statutory requirements were complied with.

■■ Under the authority of Haverbekken v. Hale, supra, the mere fact that appellant appeared before the jury of view and participated in a hearing before them did not cure the jurisdictional defects. The public generally, at least of that county, had a right to be heard on the application to build the road. The people affected, by taxation or otherwise, were interested in the road project and had the right to appear and contest the building of it. Article 6705 provides for advertisement to be posted. Article 6709 provides that written notice shall be served upon the landowner, his agent or attorney, through whose land the road may run. By these provisions, we think, the Legislature intended that the advertisement to be posted is for the purpose of informing the public generally, and that it is not to be regarded as exclusive information to such landowners whose lands may be affected by the road. We conclude that the advertisement by posting notices of the intended application to lay out the road is a jurisdictional step to be taken before a commissioners' court can proceed.

Article 6704 provides that the commissioners' courts shall classify all public roads in their counties. Subdivision 1 of the statute prescribes that first-class roads shall be "not less than forty feet nor more than sixty feet wide." In this case the commissioners' court undertook to lay out a first-class highway 80 feet in width. At the time the road involved in this case was located, we think, commissioners' courts of this state could not, in any instance, condemn a right of way for a highway more than 60 feet wide.

Article 6674b co-ordinates all the state highways of this state into one general system.

Article 6674c provides that commissioners' courts of each county in the state may aid in the construction and maintenance of any section or sections of macadamized, graveled, or paved roads in said county constituting a part of the state highway system, and may enter into contracts with the state highway department for that purpose.

Article 6674d provides that all further improvements of said state highway system with federal aid shall be made under the exclusive and direct control of the state highway department and with appropriations made by the Legislature out of the state highway fund. The further improvement of said system without federal aid may be made by the state highway system either with or without county aid.

Article 6674f provides that the total cost of all state highways made with county aid shall be paid out of the state highway fund; that the county or road district in which any such improvement may be made shall reimburse said fund in such amounts, and in such proportion of the total cost of improvement, as may be agreed upon between the state highway department and the commissioners' court of the county.

Article 6674g provides that said county aid shall be paid to the state highway department for deposit in the state treasury to the credit of the state highway fund. It shall be paid by warrants issued by the county clerk and countersigned by the county judge and approved by the commissioners' court upon accounts of the state highway department certified by the state highway engineer.

Article 6674n provides as follows: "Whenever, in the judgment of the State Highway Commission, the use of any timber, earth, stone, gravel, or other material, convenient to any road being constructed or maintained under the provisions of this Act will facilitate such construction or maintenance or whenever in the judgment of said commission it is necessary or expedient to construct or reconstruct any such road over a new or wider right of way, the State Highway Commission shall have the right to use any such materials most convenient to such roads and to acquire such land or lands for the public use and benefit as may be necessary for the new or wider right of way. In such cases the owner of such materials or land shall be paid therefor out of the State Highway Fund. Provided, that should the owner of such land or materials and the State Highway Commission fail to agree upon the amount to be paid therefor, then the Attorney General at the request of the State Highway Commission shall proceed to condemn the same for and on behalf of the State of Texas in the same manner as near as may be that commissioners' courts of certain counties may condemn materials under the provisions of Articles 6894 and 6895, Title 119, Revised Statutes, 1911, such condemnation proceedings to be held in the county in which such material or land so to be condemned may be situated. The highway commission's portion of the expense of such proceedings shall be paid out of the State Highway Fund."

■■ It appears from these articles of our statutes that all the state highways of this state are under the exclusive control and management of our state highway department; that whenever a county undertakes to aid in the construction or maintenance of a state highway within its borders it must make its contract to do so directly with the state highway department, and it must pay its aid money to that agency of the state for the purpose of reimbursing the state highway fund.

In the case of Singeltary v. Heathman, 300 S.W. 242, 245, the Court of Civil Appeals at Galveston, in discussing such issue, said: "But there being no such specification, and the highway for which the money was voted to be expended being not only a part of the state highway system, but also a recipient of federal aid as such, its ownership, location, and control were vested exclusively in the state highway commission (Robbins v. Limestone County, 114 Tex. 345, 268 S. W. 915) subject only to the qualification that, under the United States Highway Act of 1921 [23 USCA §§ 1–25], the approval of a location on the ground by the federal bureau of roads must first be had before construction work could begin."

That case reached the Supreme Court of this state on a writ of error, Heathman v. Singletary, 12 S.W.(2d) 150, 153, and in discussing the matter, Judge Short, for the Commission of Appeals, said: "It is further held that the commissioners' courts of the state never exercise any jurisdiction over the highways except by virtue of the laws of the state, as enacted by the Legislature, and that since article 5, sec. 18, of the Constitution, conferring on the county commissioners jurisdiction over all county business, does not, in terms, confer on that body power over county roads, the Legislature has the authority to take away the jurisdiction once conferred upon commissioners' courts over public highways of the state and transfer it to another agency. This the law has done as to state highways."

■ We conclude that at the time the road involved in this case was laid out and constructed, the commissioners' court of Wilbarger county had no power to institute and prosecute the proceeding to condemn any part of appellant's land for state highway purposes; and since the state highway department was not a party to the proceeding, the county court below was without jurisdiction to proceed with the matter. Watt v. Studer (Tex. Civ. App.) 22 S. W. (2d) 709; Central P. & L. Co. v. Willacy County (Tex. Civ. App.) 33 S.W. (2d) 476.

■ Appellees suggest in their brief that appellant, by appearing and participating in the hearings and proceedings, and by written agreement, and also by oral agreement in open court, has waived the right to question the jurisdiction of the county court. It was within the power of appellant to waive the personal notice to himself. Crawford v. Frio County (Tex. Civ. App.) 153 S. W. 388. But he could not waive the twenty days' advertise-

ment of the intended application to lay out the road. That information is for the public generally, and is a jurisdictional step without which there is no jurisdiction. Haverbekken v. Hale, supra.

One paragraph of the written agreement referred to reads: "It is further agreed that if the county court case aforesaid goes to trial before a special judge, that plaintiff, Judge Hall, will dismiss the District Court case heretofore referred to, and will not make application for injunction; that until the case is dismissed the status quo of the District Court case shall be maintained as at present, and in event it is not dismissed under this agreement the defendants in that suit will enter their appearance for the January, 1930, term of court, and will file their answer or answers on or before appearance day." 

It is seen by the language used that no agreement was made to dismiss such case. The language itself refutes any such agreement. It placed appellant under no obligation to dismiss. He was to dismiss or not to dismiss at his option. The language is empty.

Another part of the agreement reads: "It is further agreed that the plaintiff, Judge Hall, will not contest the condemnation proceedings heretofore had as to his land on Highway No. 28 as to any alleged irregularities or illegalities."

We do not understand why appellant was styled "plaintiff" in the agreement. He was, as a matter of fact, the defendant.

It was then agreed in open court that all matters in controversy would be eliminated and waived except the value of the land taken, and the damages and benefits, if any, to appellant's land not taken.

 It is within the power of parties to a lawsuit to waive simple irregularities affecting their rights; but they cannot waive such matters as jurisdiction in the court to hear and determine their controversies. They cannot create a court. The law of this state has established the several courts thereof and has firmly fixed their jurisdictions. The jurisdiction of a court as fixed by law cannot be changed by the parties to a suit pending therein. It is the duty of every court to inquire for the purpose of ascertaining if it has jurisdiction over the subject-matter and the persons to the suit. If the court has no jurisdiction, it should proceed no further with the case other than to dismiss it for want of power to hear and determine the controversy. In such a case, any order or decree entered, other than one of dismissal, is void. It is an empty proceeding which the law will not recognize as having any effect. Appellate courts, however, do have jurisdiction to arrest such a proceeding, to declare its invalidity, and to set it aside. This the appellate court will do on its own motion. We conclude, therefore, that appellant could not

waive any jurisdictional matters in the trial court; and neither does the doctrine of estoppel apply so as to confer jurisdiction. The county court of Wilbarger county was without jurisdiction to take any step in the proceeding before it other than to dismiss it for the want of power to hear and determine the conflict. 15 C. J. 844, § 164; 15 C. J. 802, § 101; 7 R. C. L., 1039, § 70; Perkins v. U. S. F. & G. Co. (Tex. Com. App.) 299 S. W. 213; Williams v. Steele, 101 Tex. 382, 108 S. W. 155, 157.

 The exhibits referred to, as having been filed and attached to appellees' pleading after the trial of the case, were stricken out by the trial court on motion of the appellant. The court was correct in this action. Litigants have no right to amend or supplement their pleadings after the trial of the case. A proper pleading is a jurisdictional step to be taken before the court can hear and determine the controversy. The pleading of appellees upon which the case was tried should have described appellant's land. Wilson v. Newton County (Tex. Civ. App.) 269 S. W. 227; Parker v. F. W. & D. C. Ry. Co., 84 Tex. 333, 19 S. W. 518.

In view of further litigation over the subject-matter, we have been asked to discuss other points brought forward in the record, especially with respect to the rules of law governing the measure of damages, if any, and the benefits, if any, to appellant and his land by reason of the construction of said highway across his farm.

Not only does the law abhor a multiplicity of suits, but, we think, it abhors any disposition on the part of an appellate court to fail or refuse to pass upon all questions brought before it, which have arisen or may likely arise affecting the merits of the controversy.

Article 3265, R. S. 1925, bearing upon the rule of damages, under the exercise of the right of eminent domain, subdivision 4 thereof, reads as follows: "In estimating either the injuries or benefits, as provided in the preceding article, such injuries or benefits. which the owner sustains or receives in common with the community generally and which are not peculiar to him and connected with his ownership, use and enjoyment, of the particular parcel of land, shall not be considered by the commissioners in making their estimate."

Appellant contends that the testimony of the witnesses of the appellees, when analyzed, shows that they fixed the amount of appellant's damages to the remainder of his land at fifty to seventy-five dollars per acre, and that their testimony further shows that they offset this specific injury by the increased value of the land resulting from the construction of the road through that community; that the substance of their testimony is that while the farm was damaged from fifty to

seventy-five dollars per acre, the general benefit occasioned by the coming of the road, in the increased market value of the land, which was common to the community, offset and balanced the amount of damages and benefits; and that the jury, in answering the issue, adopted their theory. We have examined the testimony of the witnesses and believe that appellant's construction of the effect of their testimony is correct.

It was shown by the testimony that, before the building of the road across appellant's land, there was a state highway on the north and west sides thereof, and a private road on the east side, giving him ample road facilities to market, church, and school.

 The increased market value of the land brought about by the construction of the paved road is not such benefit standing alone as can be offset against actual damages done to the farm. Such improvement must result in benefits peculiar to that tract of land, such as a resulting drainage or other condition that actually improves the land as a farm—being a farm before the road was laid —and which increases its intrinsic or usable. value. If there were no suitable roads available to the land, and the new road to or across the farm brought about a benefit which was not common to the other land in the neighborhood, it would be a benefit to be considered, for over the new road the farmer would have an outlet to market, to church, and school, which was not enjoyed before. If the construction of the road does no more than increase the market value of the land, it might only result in increased taxes, which would detract from its income. However, any increase in taxes brought about by the increased value of the land by reason of the improvement it appears would be common to all the land in the community through which the road passes and would, therefore, not be the basis of damages resulting to any particular tract of land.

It might be said that a paved highway, such as the one named in this case, is an improvement over the dirt roads, and that the use of the paved road results in a benefit and enjoyment of the farm not had until the new road was built. But this sort of benefit would be common to all the land in the vicinity of. the route of the road, and not peculiar to any certain tract of land along the highway, and therefore, under the statute, could not be offset against actual damages. Likewise, the injuries resulting from the construction of the road, such as the noise and annoyance of the highway traffic, cannot form the basis for damages because it is common to the community generally.

In the case before us it appears that the road across appellant's farm cuts it in two irregularly formed tracts, the two tracts being about equal to each other in area, and forming an acute angle of about forty degrees in each tract, with its complimentary obtuse angle on the opposite side of the highway, resulting in inconvenience in cultivating the area lying at and near the vertices of the acute angles. The rows in the field will have to be shorter than before the road was made, thereby causing a waste of time in turning from one row to another in the cultivation of the crop. This condition has also brought about the inconvenience and expense of building a crossing over the highway in order to pass from one tract to the other. There is some evidence in the record indicating that the building of such road across appellant's farm has brought about a condition that causes his farm to overflow with water from rainstorms. All these matters and conditions should be considered in arriving at the damages sustained by appellant. But the increased value of the land and the usable value of the paved road, being common to all the land in the vicinity. of the route of the highway, and not peculiar to appellant's farm, should not be considered. Articles 3265, 6771; Anderson v. Wharton County, 27 Tex. Civ. App. 115, 65 S.W. 643; Shirley v. Russell, 149 Va. 658, 140 S. E. 816; Williamson v. Read, 106 Va. 453, 56 S. E. 174; Cook v. Eastland County (Tex. Civ. App.) 260 S. W. 881; Eastern Texas Ry. Co. v. Eddings, 51 Tex. Civ. App. 166, 111 S. W. 777; Harris County v. Gerhart, 115 Tex. 449, 283 S. W. 139; Angelina County v. Bond (Tex. Civ. App.) 16 S.W.(2d) 338; Palo Pinto County v. Gaines (Tex. Civ. App.) 168 S. W. 391; Voss v. Harris County, 33 Tex. Civ. App. 249, 76 S. W. 600.

We approve the holding in the case of Shirley v. Russell, supra, with the exception that we do not think it can be held as a matter of law that dirt roads are not adequate or suitable to travel or transportation by motor vehicles. We think that depends upon the manner in which such roads are maintained, the character of the soil, and the weather.

 The trial court submitted to the jury the following special issue: "What is the difference in the reasonable fair market value, if any, of the balance of the defendant's land just prior to the building of the highway over said land and just after said highway was built?"

Appellant objected to said issue being submitted. Based upon what has been said about such market value, and upon the authorities above cited, we think the court erred in submitting said issue to the jury. The jury found there was no difference, and in arriving at that finding they may have, and probably did, offset the increased market value of the land traversed by the road against the damages occasioned thereby to such land as a farm. The question to be determined in this case is whether the usable value of the

land as a farm has been increased or diminished by the building of the road. And in arriving at a solution of the question, neither the increased market value of the land nor the usage of the paved highway by appellant, his employees or tenants, should be considered because such benefits and enjoyment of the highway are common to the community generally.

The judgment of the county court is reversed and the condemnation proceedings dismissed. The costs in the trial court and in this court are taxed against Wilbarger county.

### On Motion for Rehearing.

In our former opinion rendered in this case we held that commissioners' courts of this state, at the time the road involved herein was laid out, had no power to condemn, in any instance, a right of way for a public road more than sixty feet in width. We were in error in making any such holding. It appears that in 1927 the Legislature (chapter 178, § 1 [Vernon's Ann. Civ. St. art. 6704]) amended article 6704 of the Revised Statutes of 1925 by substituting the word "eighty" for the word "sixty" in subdivision 1 thereof, which gave commissioners' courts the right to condemn a right of way for county roads not to exceed eighty feet in width. That act was again amended in 1929 (chapter 197, § 1 [Vernon's Ann. Civ. St. art. 6704]). But the amendment of 1927 was in force when the road here involved was laid out and constructed. In passing upon the powers of commissioners' courts with respect to such matters, we overlooked the act of 1927. To that extent the appellees' motion for rehearing is granted and that part of our opinion which declares that commissioners' courts of this state, at the time the road in question was laid out, had no power to condemn, in any instance, a right of way for a public road in excess of sixty feet, is withdrawn.

On all other matters we incline to the views heretofore expressed by us and, with the exception above noted, the motion for rehearing is overruled.