# LONE STAR GAS CO. v. CITY OF FORT WORTH et al.

## No. 12872.

Court of Civil Appeals of Texas. Fort Worth.

July 1, 1933.

Rehearing Denied Jan. 13, 1934.

Thompson & Barwise, of Fort Worth, and Roy C. Coffee and Karl F. Griffith, both of Dallas, for appellant.

R. E. Rouer, J. M. Floyd, R. B. Young, Jr., and B. K. Goree, all of Fort Worth, for appellees.

CONNER, Chief Justice.

This suit was instituted by the Lone Star Gas Company in the district court of Tarrant county against the city of Fort Worth, William Bryce, mayor of the city, and its councilmen, seeking to enjoin the city and its officers from condemning or instituting any proceedings having the purpose to condemn the public service plant, properties, and facilities of the appellant gas company. The petition contains special and detailed allegations upon which the action is founded, which, briefly indicated, are as follows:

(1) It is alleged that there are no provisions in the Constitution or general statutes of the state of Texas authorizing and permitting or prescribing a mode and manner of condemning or acquiring property of the kind and character devoted to public service in the city of Fort Worth by the appellant company, consisting in the main of personal property, and guaranteeing payment of adequate compensation therefor.

(2) That the general statutes of Texas, relating to eminent domain, to wit, title 52, arts. 3264 to 3269, inclusive, of the Revised Statutes of 1925, which prescribe the rules, regulations, and method of procedure to be followed in the condemnation and appropriation of property, are inapplicable, and any proceedings instituted in conformity therewith would be void because said articles only authorize and permit the condemnation of land and real property.

(3) That the city, while having the power, has in fact not adopted rules and regulations contemplated by the statutory provisions for the acquisition of the public service property of the appellant company, and that, in the absence of any such rules, the city of Fort Worth would not be authorized to institute proceedings to condemn the public service properties of the appellant.

(4) That there is no provision in the Constitution of the state of Texas, the general laws thereof, or in the charter of the city of Fort Worth, securing appellant in the right given it by the state and Federal Constitutions, to adequate compensation being first made or secured to it for the property sought to be condemned or appropriated prior to actual condemnation, and that, in the absence of such adequate compensation being first made or secured, the section of the Constitution referred to would be violated.

(5) It was further alleged that 80 per cent. of the value of the gas company's plant and property in the city of Fort Worth and environs which the city proposed to take, proceeding under the general statutes without plaintiff having been afforded due course of law and adequate compensation for the taking and destruction of the property as guaranteed by constitutional provisions, had a fair value of $16,000,000, which the city was without means or power to provide; that it was, from time to time, necessary for the company to borrow money, issue new stock, and sell securities, and that the mere institution of the proceedings threatened by the city in the county court under the general statutes would seriously impair the plaintiff's credit and interfere with the proper operation and maintenance of its gas distribution system, as a result of which such securities would shrink in value and the company's creditors would increase their interest rates or refuse loans, to the company's irreparable injury.

In the view we have taken of the case, we think the foregoing statement of the allegations in the petition sufficient to indicate the general character of the suit without giving further details of the plaintiff's allegations.

We have concluded that the present appeal is without merit and may be disposed of very briefly.

The power of eminent domain is an inherent attribute of the sovereign state, and the state has the right to delegate its sovereign power of eminent domain to such agents as it deems proper, including municipal corporations. See City of Austin v. Nalle, 102 Tex. 536, 120 S. W. 996; Imperial Irriga-

tion Co. v. Jayne, 104 Tex. 395, 138 S. W. 575, Ann. Cas. 1914B, 322; Morgan v. Oliver, 98 Tex. 218, 82 S. W. 1028, 4 Ann. Cas. 900; Benat v. Dallas County (Tex. Civ. App.) 266 S. W. 539; City of Paris v. Mason, 37 Tex. 447; Hall v. Wilbarger County (Tex. Civ. App.) 37 S.W.(2d) 1041. These statements relating to power of course must be read in the light of the limitation presented by article 1, § 17, of the state Constitution, which provides that "no person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made * * * such compensation shall be first made, or secured by a deposit of money. * * *"

The city of Fort Worth is operating under the home rule amendment to the Constitution (art. 11, § 5), and authorized by act of Legislature approved April 7, 1913. See General Laws, 33d Legislature, c. 147, pp. 307 to 318, inclusive. The act confers upon cities of the class named wide powers. Among others specified not necessary to mention are the following: (a) The power to fix the boundaries of the city; (b) to hold by gift, deed, devise, or otherwise "any character of 'property'"; (c) the power to control and manage the finances of such city; (d) to prohibit the use of any street, alley, highway, or ground of the city by any telegraph, telephone, electric light, street railway, steam railway, gas company, or other character of public utility without first obtaining the consent of the governing authorities expressed by ordinance and by paying such compensation as may be prescribed and upon such condition as may be provided for by any such ordinance; (e) to determine, fix, and regulate the charges, fares, or rates of any person, firm, or corporation enjoying or that may enjoy the franchise or exercising any other public privilege in said city; (f) to buy, own, construct within or without the city limits, and maintain and operate, a system or systems of gas or electric lighting plants, telephone, street railways, sewage plants, fertilizing plants, etc.; (g) to have exclusive dominion, control and jurisdiction in, over, and under the public streets, avenues, alleys, highways, and boulevards, and public grounds of the city.

The act further specially provides in sections 5 and 6 that the enumeration of powers as given in the act shall never be construed to preclude, by implication or otherwise, any such city from exercising the powers incident to the enjoyment of self-government, provided that such powers shall not be inhibited by the Constitution of the state, and, further, that all powers theretofore granted any city by general law or special charter are preserved to each of said cities, respectively, and the power so conferred upon such cities, either by special or general law, was granted to said cities when embraced in and made a part of the charter of the city.

The city of Fort Worth, during the year 1924, being a city of more than 5,000 inhabitants, in due form, manner, and method of procedure, adopted its home rule charter. Its charter, among other things, provides that it may sue and be sued; may acquire property in fee simple by lease or interest or estate, by purchase, gift, devise, appropriation, condemnation, lease, or lease with privilege of purchase for any municipal purpose. It is given the power also to acquire, construct, own, lease, and operate and regulate public utilities; may assess, levy, and collect taxes for general and special purposes on all the subjects or objects which the city may lawfully tax; may borrow money on the faith and credit of the city by the issue or sale of bonds or notes of the city; may appropriate the money of the city for all lawful purposes. It may regulate and control the use, for whatever purposes, of the streets and other public places; may pass such ordinances as may be expedient for maintaining and promoting the peace, good government, and welfare of the city, and for the performance of the functions thereof. It further specially provides that the city may have all powers that may be granted to municipalities by the Constitution and laws of the state of Texas, and all such powers, whether expressed or implied, shall be exercised and enforced in the manner prescribed in the charter, or when not prescribed in the charter, in such manner as shall be provided by ordinance or resolution of the council. The council is also given authority to provide for the issuance and sale of bonds for permanent improvements and for any other legitimate municipal purpose as may be determined by the city council. It is further provided that the enumeration of the particular powers specified in the charter shall not be deemed or held to be exclusive, but all other powers may be exercised which are now or may hereafter be possessed or enjoyed by cities of over 5,000 population under the Constitution and laws of the state, the powers to be exercised in the manner prescribed by the charter, or, when not so prescribed, then in such manner as may be

provided by ordinance or resolution of the city council.

■■ The state of Texas, in establishing its judiciary department, provided for precinct, county, district, and appellate tribunals. The jurisdiction or judicial power of each has been carefully defined and specified by constitutional and legislative provisions. By legislative act, authorized by section 22 of article 5 of the Constitution, the county court, and the county court alone, has been given the power to condemn property, the taking of which may be lawfully acquired for a public use. See Texas Juris. vol. 16, § 104; Southern Kansas Ry. Co. v. Vance, 104 Tex. 90, 133 S. W. 1043. Our district courts have no original jurisdiction over the subject. The only way the district court could supersede or exercise any judicial control over a condemnation proceeding would be by legislative act so empowering by virtue of said section 22 of the Constitution, and no such act is to be found. This court also is without original jurisdiction. We could only determine the questions involved upon an appeal from a county court's trial and disposition.

■ It follows, as the day follows the night, that the vital questions presented in appellant's petition must be presented to, and determined by, the county court, if and when, if ever, the city shall institute and prosecute the threatened proceeding to condemn the property appellant seeks to protect.

In 15 Corpus Juris, 725, it is said: "It is a salutary rule of construction that, where jurisdiction is conferred upon a court in certain causes, it carries with it as a necessary incident the right to decide whether that state of facts exists which confers jurisdiction as well as all other matters which arise in a case legitimately before the court."

This statement of law was quoted with approval in an opinion of Mr. Justice Leddy, of the Commission of Appeals, in the case of M.-K.-T. R. R. Co. of Texas v. Jones (Tex. Com. App.) 24 S.W.(2d) 366. In that opinion it was further said:

"Jurisdiction granted to county courts by the law of this state to hear and determine the condemnation suits by necessary implication includes the right to try and decide all questions which may fairly arise in such controversies, including the right to determine whether the existing facts authorize the exercise of the power thus conferred. * * *

"If plaintiff in error's contention be sound, then we would have the anomalous situation of the county court, which is vested with exclusive jurisdiction in all matters of eminent domain, being impotent to exercise such jurisdiction in many instances until the district court should determine, under conflicting evidence, whether the right to condemn in fact exists. * * * We think such purpose becomes apparent upon a consideration of the provisions of subdivision 3, art. 3268, R. S. 1925, to the effect that, if upon a final trial in the county court it is determined that the right to condemn does not exist, the court shall so adjudge. This seems to plainly indicate a purpose to clothe the county court with power to determine the question as to whether under existing conditions a plaintiff has shown a right to condemn the property sought to be taken. * * *

"In order that there may be no misconception as to the extent of our holding, we desire to say we do not pass upon the question as to whether the facts pleaded by the railway company are sufficient to justify a denial of the proposed condemnation. Such issue is not presented for decision in this proceeding."

See, also, T. & N. O. Ry. Co. v. City of Beaumont (Tex. Civ. App.) 285 S. W. 944.

The case of Ellis v. H. & T. C. Ry. Co. (Tex. Civ. App.) 203 S. W. 172, 175, was one in which Ellis sought to enjoin the company from condemning certain lands sought for use as a railway. It was insisted by Ellis that for the reasons assigned the county court was without jurisdiction and that the proposed condemnation, if effected, would be null and void, and hence that the district court had jurisdiction to enjoin the same in advance. In disposing of the case, in the opinion by Mr. Justice Dunklin, it was said: "Appellant's contention that the proposed proceedings in the county court will be void for lack of jurisdictional facts, and that the district court had the right to determine in advance of the county court those jurisdictional issues, is predicated upon the assumption that the court of equity can restrain the exercise of a clear unconditional right to condemnation proceedings in another court expressly conferred by statutes the constitutionality of which is not even challenged, and we think it too clear for argument that a court of equity has no such power. As the county court acquired jurisdiction to determine the controversy, and as it had exclusive original jurisdiction to try

and determine it, that court's jurisdiction so to do could not be ousted by the district court."

It was further said in that case: "If under such a showing it can be said that the property sought to be condemned is not subject to condemnation it must be presumed that the county court will so decide. It cannot be presumed that its decision will be incorrect. In any event, appellant's remedy for an erroneous decision by that court will be by appeal to a higher court in which is vested the power to correct the error."

A writ of error was refused in that case, and it was cited with approval by the San Antonio Court of Civil Appeals in Wilson v. Donna Irrigation District No. 1 (Tex. Civ. App.) 8 S.W.(2d) 187, in an opinion by Chief Justice Fly, who also cited the following cases of like effect: Stemmons v. Dallas Power & Light Co. (Tex. Civ. App.) 212 S. W. 222; City of Dallas v. Crawford (Tex. Civ. App.) 222 S. W. 305; and Benat v. Dallas County (Tex. Civ. App.) 266 S. W. 539, 541. In the case last cited it was said: "We recognize the correctness of the doctrine of the Ellis and other cases referred to, that is, that where the condemnation of property is sought by a petitioner to whom the power of eminent domain is given by law all questions that may arise in said proceedings, such as the right to exercise the power in the instant case, or the right to condemn the particular property involved, the amount of damages, the regularity of the proceedings, etc., must and should be determined in the condemnation proceedings for the reason that in all such cases the statutes regulating the condemnation of property apply and must therefore control."

■ The allegations of appellant's petition to the effect that the threatened institution of the condemnation suit will injuriously affect appellant's credit, etc., is entitled to no weight. While under certain circumstances equity will interfere to prevent a multiplicity of suits, we know of no case where a party with the capacity to sue may not, under the constitutional guaranty that "all courts shall be open," appeal to a judicial tribunal having jurisdiction of his cause of action. The only penalty in such case, if he loses, is the payment of costs. Smith v. Adams, 27 Tex. 28; Johnson v. King, 64 Tex. 226; Salado College v. Davis, 47 Tex. 131; Shapleigh Hardware Co. v. Keeland Bros. (Tex. Civ. App.) 60 S.W.(2d) 510.

■ We conclude that the judgment of the district court denying the application for the writ of injunction sought in this case was correct. A judgment of that court undertaking to determine the material questions presented by the allegations of the plaintiff's petition would be void for want of jurisdiction, and could in no event operate to restrain the city should it in fact undertake to exercise its right of condemnation.

The judgment of the court below is accordingly in all things affirmed with costs.