

# The Attorney General of Texas

December 19, 1985

JIM MATTOX
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

714 Jackson, Suite 700
Dallas, TX. 75202-4506
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1001 Texas, Suite 700
Houston, TX. 77002-3111
713/223-5886

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Mr. Ralph Lowenfield
Chairman
Board of Regents
TSTI System
P. O. Box 1308
Waco, Texas    76703

Opinion No.  JM-394

Re:    Whether Texas State Techn
Institute  may  acquire  land
the city of Harlingen under cer
circumstances

Dear Mr. Lowenfield:

You requested an opinion relating to the acquisition of land
the city of Harlingen by the state for use by Texas State Techn
Institute [hereinafter TSTI] in vocational and technical education

You advise us that, in 1968, the city of Harlingen adoptec
ordinance calling an election of the voters to approve or disapp
authority of the city commission to convey all or part of appr
mately 118 acres as "determined advisable by the city commission,
time to time," for the restrictive purpose of establishing
operating a vocational and technical training institute and 
reversion of the title in the event of a breach of the restrict
Harlingen, Ordinance No. 68-11 (May 16, 1968).  In 1968, the vo
approved such a conveyance of the land and improvements in the 
cribed area, which constitutes a total of 118.6 acres at the Harli
Industrial Air Park (formerly the United States government's Harli
Air Force Base).  Also in 1968, the city of Harlingen conv
approximately 22 acres to the Lower Rio Grande Valley Develop
Council for the establishment of a vocational skills training cen
After the legislature created TSTI in 1969 with a board of reg
authorized to accept, in the name of the state, the conveyance of 
and facilities in Cameron County and Potter County, the 22 acres 
transferred to the state for use by TSTI.  See Acts 1969, 61st L
ch. 179, at 515.  TSTI continuously has occupied, developed, and 
the property as provided by chapter 135 of the Texas Education C
Since the original conveyance, the city from time to time
transferred to the state of Texas other tracts of land from
original 118 acres for the continued growth and development of
vocational and technical school operated there by TSTI.

You ask the following:

1.  Is the election which was held on the 11th
day of June, 1968, as set forth in the Ordinance
identified as 68-11, valid in the following
respects:

1803

a. Does it define the adequate consideration for the city of Harlingen to transfer the property to the state of Texas?

b. Is this an offer to any legal entity, including the state of Texas, which, once accepted by the erection of buildings and the training of students in compliance with the ordinance, constitutes an offer and acceptance and binding contract?

c. Are the subsequent transfers of fee simple, of the title to the state of Texas of tracts of land within the area described in the Ordinance (68-11), a ratification of the Ordinance?

d. Is the Ordinance (68-11), approved by the voters of Harlingen, still in full force and effect and binding upon the present and future city commissions?

e. Does the city of Harlingen hold the title to the remaining property yet to be conveyed to the state of Texas in trust for and in behalf of the state of Texas?

f. Does the city of Harlingen, in order to rescind the Ordinance approved by the voters in 1968, require an election called for the purpose of rescinding the vote?

g. Are any future conveyances subject to the provisions of article 5421c-12, V.T.C.S., or can the parties continue to rely upon the previously approved Ordinance?

2. Does Texas State Technical Institute as an agency of the state of Texas have the authority of eminent domain in the counties identified in chapter 135 of the Education Code wherein it specifies its authority to acquire title to property?

3. May the city of Harlingen donate and convey a tract of land to the state of Texas for use in building and operating a state vocational and technical institute?

> 4.  If the city may make a donation to the state of Texas, once public hearings are held under the provision of article 5421Q, V.T.C.S., is it then binding on future city officials?

These questions are so intertwined with issues of fact that we cannot properly address them here in a comprehensive manner. However, we will attempt to offer some general guidance regarding the strictly legal issues involved. The information provided here is not intended to affirm the validity of any particular contract. The value of the benefits to the city, whether such benefits furnish adequate consideration for the transaction, and whether such benefits would be deemed to be not less than the fair market value of the property in question, are fact questions that we cannot answer.

The city of Harlingen, as a home rule city, has all the power not denied to it by the constitution and statutes of the state. However, the charter of a home rule city and ordinances passed pursuant to its charter authority cannot contain provisions inconsistent with the Texas Constitution or general laws of the state. Tex. Const. art. XI, §5; V.T.C.S. art. 1165; City of Nassau Bay v. City of Webster, 600 S.W.2d 905, 910 (Tex. Civ. App. - Houston [1st Dist.] 1980), writ ref'd n.r.e. per curiam, 608 S.W.2d 618 (Tex. 1980); Royer v. Ritter, 531 S.W.2d 448, 450 (Tex. Civ. App. - Beaumont 1975, writ ref'd n.r.e) and cases cited therein; Attorney General Opinion M-1232 (1972). When the legislature enacts a statute in conflict with a prior city ordinance, the city ordinance is rendered ineffective except as to certain vested rights. See Deacon v. City of Euless, 405 S.W.2d 59, 62 (Tex. 1966); City of Baytown v. Angel, 469 S.W.2d 923, 925 (Tex. Civ. App. - Houston [14th Dist.] 1971, writ ref'd n.r.e.). In Deacon v. City of Euless, the Texas Supreme Court pointed out that the Legislature cannot, by retroactive legislation applicable to municipal corporations, destroy or impair vested rights which persons have acquired in their relationships with the municipal corporations, but municipal corporations do not acquire vested rights against the state. 405 S.W.2d at 62.

Subsequent to the adoption of the city ordinance in 1968, the legislature enacted a limitation on the power of cities to sell land owned by a city. Article 5421c-12, V.T.C.S., originally enacted in 1969, is a general law governing the conveyance of land owned by a political subdivision of the state, whether the land is sold or exchanged for other land. Article 5421c-12 presently provides, in pertinent part, that

> Section 1.  No land owned by a political subdivision of the State of Texas may be sold or exchanged for other land without first publishing in a newspaper of general circulation in the county where the land is located or in an

adjoining county, if there is no such newspaper, a notice that the land is to be offered for sale or exchange to the general public, its description, its location and the procedures under which sealed bids to purchase the land or offers to trade for the land may be submitted. . . .

Sec. 2. Bid procedures and publication requirements as set forth in Section 1 of this Act shall not be applicable in the sale or disposal of real property interests belonging to a political subdivision in the following circumstances:

(1) narrow strips of land, or land so shaped or so small as to be incapable of being used independently as zoned or under applicable subdivision or other development control ordinances, in which event such land may be sold to the abutting property owner or owners in proportion to their abutting cwnership, such division between owners to be made in an equitable manner;

(2) streets or alleys, whether owned in fee or used by easement, in which event such land or interest may be sold to the abutting owner or owners in proportion to their abutting ownership, such division between owners to be made in an equitable manner;

(3) all types of easements where the abutting property owner or owners also own the underlying fee simple title, in which event such land or interest may be sold to the abutting property owner or owners in proportion to their abutting ownership, such division between owners to be made in an equitable manner;

(4) any land or interest therein which was originally acquired for the purpose of streets, rights-of-way or easements which the political subdivision chooses to trade or exchange as consideration for other land acquired for streets, rights-of-way or easements, including transactions which may be partly for cash and partly by trade or exchange;

(5) land owned by a political subdivision which it desires to have developed by contract with an independent foundation; or

> (6) any interest in land that is conveyed by a political subdivision to a governmental entity having the power of eminent domain.
>
> . . . .
>
> Sec. 4. Any conveyance, sale or trade made under the exemptions set forth in Section 2, shall never be for less than the fair market value of the land or interest being conveyed, sold, or traded, as determined by an appraisal obtained by the political subdivision, which shall be conclusive of the fair market value thereof.

V.T.C.S. art. 5421c-12 (see Acts 1985, 69th Leg., ch. 367, at 2667 for amended §2).

Whether the city of Harlingen and the state of Texas entered into a binding contract in 1968 — and the terms of such a contract, if any — involve complex questions of fact and interpretations of the city's charter and ordinance. We are not equipped to answer such questions in the opinion process. However, the ability of the state and an agency of the state to enter into a contract is not unlimited. The Texas Constitution is silent as to the length of the term for which a contract may be made by the state, but the state may not enter a contractual relationship that imposes on it an obligation for a period in excess of two years. Article VIII, section 6 of the Texas Constitution provides that no appropriation may be made for a period longer than two years. Article III, section 49 prohibits the state from creating debts and prevents contracting on the basis of anticipated revenues. The state may enter into an indefinite or long-term binding contract involving the expenditure of appropriated funds if payment is conditioned on the availability of appropriated funds. See Attorney General Opinion MW-70 (1979). One session of the legislature cannot bind subsequent sessions or mandate the continued existence of TSTI or its biennial funding. The consideration for and duration of a contract, if any, between the city and the state would be limited to the period during which the legislature continues the operation and funding of the Harlingen facility of TSTI. See City of Big Spring v. Board of Control, 389 S.W.2d 523 (Tex. Civ. App. - Austin 1965), aff'd, 404 S.W.2d 810 (Tex. 1966) (relating to the validity and terms of a written contract between a city and the state whereby the city furnishes water to a hospital established and operated by the state at the city).

The Texas courts have held that numerous statutes prescribing procedures and restrictions on the sale and conveyance of land by political subdivisions are not applicable when the grantee is another governmental agency having the power of eminent domain over the property involved. Governing bodies with the power of eminent domain

do not need the consent of an electorate to obtain property they need for public purposes. Political subdivisions having the power of eminent domain may avoid condemnation proceedings when they agree among themselves as to the paramount public use of land owned by one of them. See Kingsville Independent School District v. Crenshaw, 252 S.W.2d 1022 (Tex. Civ. App. - San Antonio 1943, writ ref'd) (adopting in full the opinion in Kingsville Independent School District v. Crenshaw, 164 S.W.2d 49 (Tex. Civ. App. - San Antonio 1942, writ ref'd w.o.m.)); El Paso County v. City of El Paso, 357 S.W.2d 783 (Tex. Civ. App. - El Paso 1962, no writ). See also Bolton v. City of Waco, 447 S.W.2d 718 (Tex. Civ. App. - Waco 1969, writ ref'd n.r.e.); Attorney General Opinions H-1256 (1978); H-108 (1973); H-93 (1973).

We conclude, however, that TSTI does not have the power of eminent domain. The right of eminent domain is the inherent power of the sovereign to take property for public use and welfare, provided adequate compensation is made. See Maberry v. Pedernales Electric Cooperative, Inc., 493 S.W.2d 268 (Tex. Civ. App. - Austin 1973, writ ref'd n.r.e.). An agency or political subdivision of the state has only the power of eminent domain expressly conferred on it by the legislature. See Hall v. Wilbarger County, 37 S.W.2d 1041 (Tex. Civ. App. - Amarillo 1931), aff'd, 55 S.W.2d 797 (Tex. Comm'n App. 1932). Section 135.02(c) of the Texas Education Code provides only that the board of TSTI "may accept or acquire by purchase" land and facilities in three named counties. No statutory provision of which we are aware grants authority to the board of TSTI to acquire property by condemnation.

The Sixty-ninth Legislature amended section 2 of article 5421c-12, V.T.C.S., to exempt from the bid procedures and publication requirements of that act "any interest in land that is conveyed by a political subdivision to a governmental entity having the power of eminent domain." Acts 1985, 69th Leg., ch. 367, at 2668. The facts presented to us indicate that none of the exemptions in section 2 are applicable to the land in question. Section 4 of article 5421c-12 still provides, however, that a conveyance exempt from bid procedures and notice requirements shall not be made for consideration that is less than the fair market value of the land or interest being conveyed.

Your questions suggest a need to comply with article 5421q, V.T.C.S. Section 26.001 of the Texas Parks and Wildlife Code (formerly V.T.C.S. art. 5421q) requires notice and a hearing and certain findings before land designated or utilized as a "park, recreation area, scientific area, wildlife refuge, or historic site" may be disposed of by a municipality or other governmental entities. Section 26.001 does not apply to the property about which you inquire since that property has not to our knowledge been designated for any of those purposes. See Attorney General Opinions H-108 (1973); H-93 (1973); M-788 (1971). Chapter 26 of the Parks and Wildlife Code,

entitled Protection of Public Parks and Recreational Lands, does not define the term "park," but we do not believe the term is intended to apply to the Harlingen Industrial Air Park.

## S U M M A R Y

Article 5421c-12, V.T.C.S., enacted after an ordinance of the city of Harlingen authorized the conveyance of 113 acres for use as a vocational training school and after the conveyance of 22 acres from that tract, limits the power of cities to sell land owned by cities. Subsequent to its original conveyance, the land was transferred to the state for use by Texas State Technical Institute. Whether the city and TSTI entered a binding contractual relationship prior to article 5421c-12 and, if so, the terms of the contract, involve fact questions and interpretations of the city's charter and ordinances that this agency is not equipped to answer in the opinion process. TSTI has not been granted the power of eminent domain. The property in question is not subject to the requirements of section 26.001, Texas Parks and Wildlife Code.

Very truly yours

JIM MATTOX
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

ROBERT GRAY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Nancy Sutton
Assistant Attorney General